**Delores NEUBAUER, Petitioner and Appellant,**

v.

**JOB SERVICE NORTH DAKOTA, Respondent and Appellee,**

and

**Choice Hotels International, Respondent.**

Civ. No. 930278.

Supreme Court of North Dakota.

Feb. 23, 1994.

---

Richard R. LeMay, Legal Assistance of North Dakota, Minot, for petitioner and appellant.

Douglas Alan Bahr, Asst. Atty. Gen., Bismarck, for respondent and appellee.

VANDE WALLE, Chief Justice.

Delores Neubauer appealed from a district court judgment affirming the decision of Job Service that Neubauer had been discharged from her employment for reasons constituting "misconduct", which disqualifies her from receiving unemployment compensation benefits. We affirm.

Neubauer had been employed full-time as a reservation sales agent for Choice Hotels International (Choice Hotels) for approximately eighteen months. Neubauer's position required that she handle incoming telephone calls from customers, usually seeking to make hotel reservations. Neubauer was

released from employment from Choice Hotels on October 28, 1992, on grounds that she had, on more than one occasion, violated company policy regarding the handling of incoming calls. Neubauer applied for unemployment benefits, and Job Service held a hearing regarding her application.

Lonnie Hovde, personnel supervisor from Choice Hotels, testified at the hearing that company policy requires reservation sales agents to report to a supervisor whenever a disconnection occurs during a conversation between the sales agent and a customer, or whenever a customer is unhappy or a transaction is not completed satisfactorily. Hovde testified that company policy also requires that, if a customer becomes angry or difficult to deal with, the agent is to transfer the call to a supervisor to handle the situation. According to Hovde, Choice Hotels' employee handbook provides that a violation of company policy is grounds for immediate dismissal.

Supervisors at Choice Hotels monitored Neubauer's performance on several occasions and found her to have violated company policy by disconnecting telephone calls and by failing to report "dropped" calls to her supervisor. The supervisors testified that Neubauer had received warnings about unreported dropped calls since April of 1992. On September 11, 1992, a supervisor heard a caller ask Neubauer if Neubauer could hold while the caller responded to another telephone call. Neubauer did not answer the caller's request, cleared the caller's partially-completed reservation from the computer screen, and answered another call. Neubauer did not report the incident to her supervisor.

The supervisor also testified that, during the September 11, 1992, monitoring session, Neubauer's computer malfunctioned while she was assisting a caller. Rather than informing the customer of this fact and requesting that the customer call back at a later time, Neubauer "logged out of her phone and went on break."

After the September 11, 1992, monitoring session, the supervisors recommended Neubauer undergo additional training. As part of the training, Neubauer was reminded of the company policy that reservation agents must contact their supervisors when calls are dropped or released.

On October 23, 1992, following a customer's complaint that a reservation agent named "Dee" had disconnected her call, the supervisors decided again to monitor Neubauer's performance. The supervisors determined that Neubauer was the only agent answering to the name "Dee" who was working at the time. During this forty-five minute monitoring session, the supervisors observed that three calls were released by Neubauer in the middle of the calls. None of the three incidents were reported to the supervisors.

A supervisor testified that during this monitoring session, a caller had requested a discount from the hotel rate Neubauer had quoted the individual. Neubauer offered the caller another discount, but the caller was insistent. The supervisor testified that company policy requires that, in such instances, the call be forwarded to a supervisor. Instead, the call was disconnected, and the incident was not reported to a supervisor.

Neubauer denied that she had ever disconnected a call and testified that she had regularly reported phone system malfunctions involving disconnections to her supervisors, although she did not have time to report them all. Neubauer estimated that as many as fifteen times per day she answered the phone to find no one on the line or lost contact with a caller due to problems with the system. She estimated that she reported five to eight of these incidents to her supervisor each day.

When asked whether there was a record of the reports Neubauer had submitted, the supervisors testified that they had not reviewed such records in preparation for the hearing, but had only reviewed their reports concerning the September 11 and October 23, 1992, monitoring sessions. The supervisors doubted that Neubauer had reported having had such problems, however, because problems of such a recurring nature would have required and received immediate attention.

Job Service determined that Neubauer was disqualified from receiving job insurance benefits under section 52–06–02(2), NDCC, because Neubauer was discharged for mis-

conduct. Neubauer appealed to the district court, which affirmed.

Neubauer argues that Job Service erred in both its findings of fact and conclusions of law. As to the findings of fact, Neubauer asserts that the evidence presented at the hearing failed to establish that Choice Hotels had a policy requiring that disconnected or dropped calls be reported to a supervisor and that she did not violate the policy by dropping or disconnecting any calls. Neubauer further asserts that the findings of fact failed to support a conclusion that her behavior constituted "misconduct" which would disqualify her from receiving unemployment benefits.

When we review the findings of fact by an agency, we will not make independent findings or substitute our judgment for the judgment of the agency. *Tehven v. Job Service North Dakota,* 488 N.W.2d 48 (N.D. 1992). Our duty is to determine only whether a reasoning mind could have reasonably found that the factual conclusions that were reached were proved by the weight of the evidence. *Id.* It is not the province of this Court to act as a "super board" in reviewing agency findings and determinations. *Hins v. Lucas Western,* 484 N.W.2d 491, 494 (N.D. 1992); *Skjefte v. Job Service North Dakota,* 392 N.W.2d 815, 817 (N.D.1986).

Lonnie Hovde testified at the hearing that Neubauer's conduct violated company policy as delineated in the employee handbook. Neubauer did not cross-examine Hovde regarding the existence of a company policy requiring employees to report disconnected calls, nor did she present evidence that such a policy does not exist. Instead, the testimony of Hovde regarding the existence of this company policy was uncontradicted. Even though the employee handbook was not admitted into evidence at the hearing, the evidence supports the finding that Choice Hotels had a policy requiring that disconnected or dropped calls be reported to the employee's supervisor.

Regarding whether Neubauer violated company policy, Job Service cited only Neubauer's failure to report the disconnected calls. Thus, the dispute regarding whether Neubauer herself disconnected calls, or whether calls were lost due to system error, need not be resolved. Neubauer concedes that she did not report every disconnected call, nor every purported malfunction of the system. The testimony reveals that Neubauer had been warned on numerous occasions that every such call must be reported to her supervisor. Choice Hotels provided Neubauer with retraining on the proper procedure in handling calls, but she still failed to notify her supervisors following every disconnected call. The evidence thus supports the finding that Neubauer violated company policy by failing to report dropped or disconnected calls.

Neubauer also disputes whether the findings of fact support the legal conclusion that she was dismissed for "misconduct", so as to preclude her from receiving unemployment benefits. The legislature has not defined "misconduct", as that term is used in section 52–06–02(2), NDCC. However, this court has adopted the definition of "misconduct" that was used by the Wisconsin Supreme Court in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941). *E.g., Tehven, supra.* In *Boynton,* it was stated that misconduct

"is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of [the] employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to [the] employer." 296 N.W. at 640.

Whether an employee was dismissed for "misconduct" under section 52–06–02(2), NDCC, is a mixed question of law and fact. *Tehven, supra.* Whether certain conduct constitutes "misconduct" depends, in part, on the nature of the employment. *E.g., Schadler v. Job Service North Dakota,* 361 N.W.2d 254 (N.D.1985).

■ It is necessary for Choice Hotels to maintain strong relations with its potential customers. We agree with the appeals referee, who stated, "It was critical to the employer to ensure that they had a properly working [phone] system. To maintain such a system, they needed to know how it was functioning. It was imperative that the claimant report abnormal happenings on the phone system to her supervisors", lest potential customers become dissatisfied with the service Choice Hotels renders its customers in making reservations.

Neubauer maintains that she regularly notified her supervisors when the phone system malfunctioned, but that she was unable to notify the supervisors each time a phone call was disconnected because she was required to continue answering other calls. The supervisors testified, however, that they had no recollection of Neubauer having notified them of problems with the system, and Neubauer herself presented no witness or documentation supporting her version of the facts. Moreover, we have previously held that repeated warnings from the employer to the employee, followed by repetition of the conduct for which the warnings were given, are sufficient evidence that the conduct was either a conscious disregard of the employer's interest or "carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer." *Skjefte, supra,* at 819 (quoting *Boynton, supra*).

Here, Neubauer was not only given repeated warnings but was given additional training in the company's policies and procedures. Despite the warnings and additional training, there was a repetition of the conduct for which the warnings and training were given. We conclude that the evidence was sufficient to support the finding that, by repeatedly failing to follow company procedure, despite numerous warnings and a period of retraining, Neubauer was dismissed for "misconduct" within the meaning of section 52–06–02(2), NDCC.

The judgment of the district court, affirming the decision of Job Service, is affirmed.

MESCHKE, LEVINE, NEUMANN and SANDSTROM, JJ., concur.