1999 ND 67

Tammie STALCUP, Petitioner
and Appellant,

v.

JOB SERVICE NORTH DAKOTA,
Respondent and Appellee,

and

Northern Plains Natural Gas, c/o
Employers Unity, Inc.,
Respondent.

No. 980248.

Supreme Court of North Dakota.

April 12, 1999.

Daniel J. Chapman, Chapman and Chapman, Bismarck, ND, for petitioner and appellant.

Douglas A. Bahr, Assistant Attorney General, Bismarck, ND, for respondent and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Tammie Stalcup appealed from a district court judgment affirming Job Service North Dakota's denial of unemployment compensation benefits. A preponderance of the evidence shows Stalcup was discharged for misconduct under section 52–06–02(2), N.D.C.C., disqualifying her from receiving benefits. We affirm.

I

[¶ 2] Stalcup was employed for approximately seven and a half years at Northern Plains Natural Gas Company. Northern Plains has a drug policy which Stalcup was informed of and agreed to follow. This policy provides that "[t]he corrective action for an employee who tests positive for a prohibited drug shall be immediate termination, unless prohibited by state law." Northern Plains conducts its drug tests according to the procedures established by the Research and Special Programs Administration of the Department of Transportation.[1] On August 19, 1997, Stalcup and six other Northern Plains employees underwent a random drug test conducted on Northern Plains' premises. Stalcup provided a urine sample which was forwarded to a laboratory in California for testing. The test results came back positive for marijuana and Northern Plains terminated her employment.

[¶ 3] Following her termination, Stalcup applied for unemployment compensation benefits. Job Service denied benefits on the basis she had been terminated for misconduct, violating a known company policy. Stalcup appealed and a hearing was held before an appeals referee. Stalcup, two Northern Plains employees and three individuals representing Northern Plains appeared at the hearing.

[¶ 4] Marlene Theis, the technician who collected the specimens from the employees and packaged them for shipment, explained the standard collection procedures. According to Theis, she poured each employee's urine specimen into a split container, affixed an identification label to each container, sealed the containers in a plastic bag and sealed the bag in a box in the presence of each employee tested. Following this, the samples were sent to an independent laboratory in California for testing and the results forwarded to Northern Plains. A copy of the laboratory report was produced at the hearing, but no one from the laboratory appeared to support or explain its contents.

1. Under 49 C.F.R. § 199.1 operators of pipeline facilities are required to test their employees for the presence of prohibited drugs. The procedures for this anti-drug program are outlined in 49 C.F.R. §§ 199.5–199.25.

[¶ 5] Following the hearing, an appeals referee concluded Stalcup was terminated for violating Northern Plains' drug policy, disqualifying her from receiving unemployment benefits. Stalcup requested Job Service review the appeals referee's decision. Job Service affirmed the decision, and Stalcup petitioned for judicial review. The district court affirmed Job Service's decision. This appeal followed.

## II

[¶ 6] Our standard of review in a Job Service case is governed by section 28-32-19, N.D.C.C., of the Administrative Agencies Practice Act. *ProServe Corp. v. Rainey*, 536 N.W.2d 373, 376 (N.D.1995). Under N.D.C.C. § 28-32-19, a reviewing court must affirm the agency decision if: (1) its findings of fact are supported by a preponderance of the evidence; (2) its conclusions of law are sustained by the findings of fact; and (3) its decision is supported by the conclusions of law. *Id.* We review the decision of Job Service, not the district court. *Id.* When reviewing an agency's findings of fact, we will not make independent findings or substitute our judgment for the agency. *Neubauer v. Job Service North Dakota*, 512 N.W.2d 428, 431 (N.D.1994). Our duty is to determine only whether a reasoning mind could have reasonably decided that the factual conclusions were proved by the weight of the evidence. *Id.*

[¶ 7] A person is disqualified from receiving unemployment benefits under N.D.C.C. § 52-06-02(2) if discharged for misconduct in connection with employment. *ProServe*, 536 N.W.2d at 376. The term "misconduct" is defined in our case law:

Misconduct is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

*Johnson v. Job Service North Dakota*, 1999 ND 42, ¶ 11, 590 N.W.2d 877. An employer bears the burden of proving, by a preponderance of the evidence, the discharge resulted from disqualifying misconduct. *Schadler v. Job Service North Dakota*, 361 N.W.2d 254, 257 (N.D.1985).

## III

[¶ 8] Stalcup argues Job Service's finding she tested positive for drugs and denial of unemployment compensation benefits is not supported by sufficient evidence. She maintains the only evidence showing she tested positive for drugs is an unsubstantiated laboratory report and exclusive reliance on this document raises evidentiary concerns. We conclude the laboratory report, alone, is sufficient evidence that Stalcup tested positive for marijuana.

[¶ 9] Jurisdictions are divided in applying the residuum rule [2] or an alternate standard for allowing administrative determinations to be based on hearsay evidence. K.C. Davis, *Administrative Law Treatise*, § 10.4, at 129 (3d ed.1994). According to Davis, while a few states still follow some version of the residuum rule, it is inapplicable to federal agencies and has been abandoned by the court that first announced the principle. [3] *Id.* Davis further states:

Rejection of the residuum rule does not mean that an agency is compelled to rely upon evidence inadmissible in a jury trial; it means only that the agency and the reviewing court are free to rely upon the evidence if in the circumstances they be-

---

2. Black's Law Dictionary 1310 (6 th ed.1990) defines the legal residuum rule:

While a decision of an administrative board may be based partly on hearsay evidence introduced at the hearing, it will be upheld on judicial review only if there is a residuum of competent evidence on which it is founded.

3. The residuum rule was created in *Carroll v. Knickerbocker Ice Co.*, 218 N.Y. 435, 113 N.E. 507 (1916). The New York Court of Appeals, in *300 Gramatan Ave. Associates v. State Division of Human Rights*, 45 N.Y.2d 176, 408 N.Y.S.2d 54, 379 N.E.2d 1183, 1185 (1978), announced in a footnote the residuum rule was being disregarded.

lieve that the evidence should be relied upon. Rejection of the residuum rule means only that the court may set aside the finding or refuse to do so as it sees fit, in accordance with its own determination of the question whether the evidence supporting the finding should be deemed reliable and substantial in the circumstances.

*Id.* at 130.

[¶ 10] There are several standards for determining whether hearsay evidence should be admissible in an unemployment compensation hearing. Some jurisdictions permit the unrestricted use of hearsay evidence on the grounds a specific statute or regulation relieves an agency from a duty to follow common law or statutory rules of evidence. *See, e.g., Ward v. Johnson,* 242 Mont. 225, 790 P.2d 483 (1990); *McConnell v. Iowa Dept. of Job Service,* 327 N.W.2d 234 (Iowa 1982). Other courts have held hearsay is admissible only where it is corroborated by other evidence. *See, e.g., Gancom v. Unemployment Comp. Bd. of Rev.,* 163 Pa.Cmwlth. 423, 641 A.2d 652 (1994). Still other jurisdictions have adopted alternative standards. *See, e.g., American Transp. Corp. v. Director, Employment Sec. Dept.,* 39 Ark.App. 104, 840 S.W.2d 198 (1992) (hearsay can amount to substantial evidence provided claimant is given opportunity to subpoena and cross-examine at some stage in the proceedings); *Industrial Claims App. Office v. Flower Stop,* 782 P.2d 13 (Colo.1989) (hearsay evidence may support an administrative decision denying unemployment compensation benefits if it is sufficiently reliable and trustworthy, and as long as the evidence possesses probative value commonly accepted by reasonable and prudent persons in the conduct of their affairs); *Carter v. Blache,* 476 So.2d 873 (La.Ct.App.1985) (hearsay evidence is admissible in the absence of an objection).

[¶ 11] The procedures governing Job Service unemployment compensation matters are outlined in chapters 28–32 and 56–06, N.D.C.C. Section 28–32–06(1), N.D.C.C., provides, in pertinent part:

The admissibility of evidence in any adjudicative proceeding before an administrative agency shall be determined in accordance with the North Dakota Rules of Evidence. An administrative agency, or any person conducting proceedings for it, may waive application of the North Dakota Rules of Evidence if a waiver is necessary to ascertain the substantial rights of a party to the proceeding, but only relevant evidence shall be admitted.

In direct contrast, section 52–06–20, N.D.C.C., reads:

The bureau and appeal tribunal shall not be bound by common-law or statutory rules of evidence or by technical rules of procedure, but any hearing or appeal before such tribunals must be conducted in such a manner as to ascertain the substantial rights of the parties.

"In construing statutes, specific provisions prevail over general provisions relating to the same subject matter, absent a manifestation of legislative intent to the contrary." *Matter of Estate of O'Connell,* 476 N.W.2d 8, 11 (N.D.1991); *see also* N.D.C.C. § 1–02–07 (stating where there is a conflict between a general provision in a statute and a special provision in the same or in another statute, the special provision must prevail and must be construed as an exception to the general provision). Thus, hearing officers, in unemployment compensation hearings, are authorized to receive evidence which ordinarily is not admissible under the rules of evidence. We, therefore, conclude the laboratory report can constitute substantial evidence. However, even where the rules of evidence are somewhat relaxed, section 52–06–20, N.D.C.C., requires administrative hearings be conducted in a "manner as to ascertain the substantial rights of the parties."

[¶ 12] Relying on this provision, Stalcup contends the hearing before the appeals referee was not held in such a manner to determine the rights of the parties. We disagree.

[¶ 13] Section 28–32–07, N.D.C.C., states:

The agency must afford each party, upon written request, an opportunity to examine the information or evidence and to present its own information or evidence and to

cross-examine the person furnishing the information or evidence.

Similarly, N.D.C.C. § 52–06–23 provides:

In the discharge of the duties imposed by the North Dakota Unemployment Compensation Law, the chairman of an appeal tribunal or any duly authorized representative or member of the bureau, may administer oaths and affirmations, take depositions, certify to official acts, and issue a subpoena to compel the attendance of witnesses and the production of books, papers, correspondence, memoranda, and other records deemed necessary. . . .

Under these statutes, the opposing party is entitled to both an opportunity to cross examine and subpoena. *See also American Transp.*, 840 S.W.2d at 200 (recognizing the right of an opposing party to subpoena and cross-examine adverse witnesses where hearsay evidence has been admitted). In our view, affording claimants, such as Stalcup, both the right to cross-examine and subpoena ensures hearings are conducted in a fair manner to ascertain the rights of the parties. Furthermore, from our review of the record, Stalcup made no effort to cross-examine or subpoena concerning the testing procedures or the preparation of the laboratory report and we, therefore, conclude she waived these rights. For these reasons, we reject Stalcup's due process arguments.

[¶ 14] Although, following strict evidentiary rules, the positive drug report would likely constitute hearsay under Rule 801, N.D.R.Evid., we believe the report would nevertheless be admissible under one of the rule's exceptions if the rule did apply. Rule 803(25), N.D.R.Evid., provides:

(25) **Other Exceptions.** A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (i) the statement is offered as evidence of a material fact; (ii) the statement is more probative on the point for which it is offered than any other evidence which the proponent can produce through reasonable efforts; and (iii) the general purposes of these rules and the

interests of justice will best be served by admission of the statement into evidence. The provision further states:

A statement may not be admitted under this exception unless the proponent of it makes known to the adverse party and to the court in writing sufficiently in advance of its offer in evidence to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

[¶ 15] The laboratory report meets these requirements. First, the positive drug test was offered as a material fact, to prove that Stalcup's termination was based upon the positive drug test. Second, the report, itself, was more probative than any other evidence showing Stalcup tested positive for marijuana. In fact, the laboratory report was the only evidence showing Stalcup used a prohibited drug. Third, we believe the interest of justice is preserved by admitting the report because it is reliable and trustworthy. Contrary to Stalcup's assertions, the report contains an indicia of reliability. It was issued by a certified laboratory and contains the names of the certifying scientist and Medical Review Officer, as well as the names, addresses and phone numbers of the testing facility and Medical Review Office. Fourth, Stalcup was aware the laboratory report would be used against her in proceedings. On October 20, 1997, Stalcup was sent a letter from Employers Unity, the authorized representative for Northern Plains. The letter read, "[e]nclosed are copies of the documents that may be discussed at the unemployment hearing" and also requested Stalcup bring these documents with her to the hearing.

IV

[¶ 16] In a related argument, Stalcup asserts there is insufficient evidence to support Job Service's decision because the agency improperly relied upon hearsay statements concerning the administration of the test. For the same reasons we determined the laboratory report did not constitute inadmissible hearsay, we conclude these state-

ments were admissible and properly relied upon by Job Service in reaching a decision.

[¶ 17] Stalcup raises a second argument concerning the administration of the test contending there is insufficient evidence to support Job Service's denial of benefits because a chain of custody regarding her urine specimen was not established at the administrative hearing. As a result, she maintains there is no way to know whether the drug testing was fairly and properly performed. After reviewing the record, we conclude a sufficient chain of custody was established to support the admissibility of the laboratory report.

[¶ 18] A preponderance of evidence shows the samples were collected in a fair manner and the testing properly completed. Stalcup is correct in asserting the employer bears the burden of proving misconduct. *See Schadler,* 361 N.W.2d at 257. However, once an employer introduces a positive drug test, Stalcup must show some reason that evidence should not be considered.

[¶ 19] In addition to the report being presented at the hearing, Theis testified she had administered the test many times and explained the testing process in detail, including the handling of Stalcup's specimen. Similarly, Mary Ann Prebel, owner of the company performing the testing at Northern Plains, testified she saw Stalcup sign the necessary forms and witnessed Stalcup's specimen being sealed in a box for shipment. Their testimony describes a chain of events showing custody over the specimen from the time Stalcup handed the container to Theis until Theis packaged the specimen for shipment to the testing site. Furthermore, the Northern Plains employees, including Stalcup, indicated the specimens were sealed in a box in their presence. In fact, Stalcup testified she heard Theis state, "it's sealed" in reference to the box. We further note there was no evidence of irregularity in the shipment of the sample to the California lab presented at the hearing.

[¶ 20] Stalcup argues the report is inadmissible due to the flaw in the proscribed testing procedures. The only departure from the established collections process involving Stalcup was the failure of the collections technician to have her initial the identification labels after placing them on the sample containers. The record shows some of the employees initialed the labels before they were affixed to the containers, while others initialed the label after it was affixed to the container.

[¶ 21] This admitted deficiency in the testing procedure was explained at the hearing. Susan Tosoni, EEO Drug Control Advisor for Enron Corporation, the parent corporation of Northern Plains, acknowledged that initialing the labels before they were placed on the specimen containers did not meet the Department of Transportation's specified procedures. According to Tosoni, this is not a fatal flaw and did not affect the outcome of the test results.

[¶ 22] The facts show the specimen containers were sealed in a box for shipment and arrived in California for testing. Although the initials were placed on the bottle prior to affixing the label to the containers, we refuse to hold this minor flaw in the proscribed procedures which has been fully explained, renders the report inadmissible where there is no evidence the specimen was tampered with or contaminated. *See e.g., Gallagher v. National Transp. Safety Bd.,* 953 F.2d 1214 (10th Cir.1992); *Cf. Broadus v. Unemployment Comp. Bd. of Rev.,* 721 A.2d 70, 73 (Pa.Commw.Ct.1998) (stating gaps in the chains of custody go to only the weight of the evidence, not admissibility, but where a sample is not taken by the laboratory which prepared the report the chain of custody must be independently proven before the report may be admitted); *see also State v. Huffman,* 542 N.W.2d 718, 721 (N.D.1996) (stating a proper chain of custody is a foundational requirement to account for the whereabouts of physical evidence up until the time it is admitted at trial, but recognizing defects in the chain of custody go to the weight of the evidence rather than the admissibility of the evidence). The testimony of the measures taken in handling and packaging the sample for shipment to the test site revealed the actual chain of custody had not been broken. From this evidence, we conclude there was a sufficient amount of evi-

dence to support the admissibility of the report.

## V

[¶ 23] Stalcup argues Job Service erred in denying benefits asserting there is a substantial difference between the two sets of initials affixed to the specimen bottles. Our role in administrative appeals is limited to determining only whether a reasoning mind could have concluded the factual conclusions were proved by the weight of the evidence. *Neubauer*, 512 N.W.2d at 431. Theis testified she witnessed Stalcup initial the identification labels. She also stated she placed these labels on Stalcup's specimens in her presence. We, therefore, conclude there is adequate evidence in the record for a reasoning mind to find the initials were not substantially different.

[¶ 24] For the foregoing reasons, we affirm the denial of unemployment compensation benefits.

[¶ 25] KAPSNER, MARING, NEUMANN, JJ., and RICHARD W. GROSZ, D.J., concurs.

[¶ 26] RICHARD W. GROSZ, D.J., sitting in place of SANDSTROM, J., disqualified.

