1999 ND 162

**Edward P. POWERS, Claimant and Appellant,**

v.

**STATE OF NORTH DAKOTA JOB SERVICE, Jennifer Gladden, Appellee.**

No. 990049.

Supreme Court of North Dakota.

Aug. 25, 1999.

Edward P. Powers, pro se.

Douglas A. Bahr, Assistant Attorney General, Bismarck, for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Edward P. Powers appealed from a district court judgment affirming Job Service North Dakota's denial of unemployment compensation benefits because he did not timely file a claim card. We reverse and remand.

I

[¶ 2] Powers was terminated from employment by the Dakota Elevator Company in August 1997. He applied for unemployment benefits and was initially denied. Following a hearing, Powers was awarded unemployment benefits effective August 17, 1997. Job Service sent Powers a claim card for the weeks ending September 6 and 13, 1997. The record does not indicate when Powers received the card. The card was returned to Job Service November 17, 1997.

[¶ 3] November 24, 1997, Job Service issued Powers a "Non-monetary Determination Notice" disqualifying him from ben-

efits from August 31, 1997 to September 13, 1997 because his claim card was not filed in a timely manner. Powers appealed and a hearing was held December 16, 1997. Powers was the only witness to testify at the hearing. An appeals referee issued a decision on December 23, 1997, disqualifying Powers from benefits from August 31, 1997 through September 13, 1997 because Powers had "not established that he had good cause for failing to return the claim card in a timely manner." Job Service affirmed the decision, and Powers petitioned for judicial review. The district court affirmed Job Service's decision. This appeal followed.

[¶ 4] We review the decision of Job Service, not the decision of the district court when reviewing a denial of unemployment compensation benefits. *Carlson v. Job Service*, 548 N.W.2d 389, 392 (N.D. 1996). The standard of review governing an appeal from an administrative agency decision is set forth in section 28-32-19, N.D.C.C., of the Administrative Agencies Practice Act. *Id.* N.D.C.C. § 28-32-19 requires a reviewing court to affirm the agency decision if: (1) its findings of fact are supported by a preponderance of the evidence; (2) its conclusions of law are sustained by the findings of fact; and (3) its decision is supported by the conclusions of law. *Stalcup v. Job Service*, 1999. ND 67, ¶ 6, 592 N.W.2d 549. We do not make independent findings or substitute our judgment for that of the agency. *Id.* Rather, our duty is to determine only whether a reasoning mind could have reasonably decided the agency's factual conclusions were proved by the weight of the evidence presented. *Id.*

## II

[¶ 5] Unemployment compensation is available to a worker who is unemployed through no fault of his own. *Esselman v. Job Service*, 548 N.W.2d 400, 402 (N.D. 1996); *Carlson*, 548 N.W.2d at 392. Section 52-06-01(1), N.D.C.C., states an unemployed individual is eligible to receive unemployment compensation benefits with respect to any week only if the individual has made a claim for benefits with respect to the week in accordance with the regulations of the agency. The specific regulations for a continuing claim for Job Service benefits are set forth in N.D. Admin. Code § 27-03-04-02. N.D. Admin. Code § 27-03-04-02(1) provides: "[c]ontinued claim, form nduc-217 shall renew the worker's registration for work and continue the worker's claim for benefits." Under N.D. Admin. Code § 27-03-04-02(3), a claimant is required to submit continued claims for benefits in person or by mail. The postmark date on the envelope constitutes the date the continued claim is filed. N.D. Admin. Code § 27-03-04-02(3). If a claimant fails to submit a claim for benefits for a week of unemployment at the time specified, the claim for benefits will be denied unless the claimant can show good cause for having failed to file the continued claim at the specified time. N.D. Admin. Code § 27-03-04-02(5).

[¶ 6] On appeal, Powers appears to argue he did not receive a claim card for the weeks ending September 6 and 13, 1997. In addition, perhaps alternatively, he appears to contend he had good cause for not timely filing the claim card because a claims interviewer in the Fargo Job Service office informed him he could file his claim cards either before or after a determination was made.

[¶ 7] During the December 16, 1998 hearing before the appeals referee, Powers testified as follows:

Q: Were you initially disqualified from benefits?

A: I was and I was rejected on benefits.

Q: That was after Dakota Elevator?

A: Yeah, from when I originally filed, I received four rejects and we had the hearing.

Q: Okay. You had the hearing with the Elevator?

A: I had the hearing with you with the Elevator people.

Q: Okay and apparently, I'm looking at Mr. Moyle's decision and he allowed benefits to you effective August 17 th.

A: Yeah.

Q: Okay. Now when you—

A: Then I received his notice. When I received his notice, I turned those claims in.

Q: What claims, the one for the—

A: The ones that I had the cards for.

Q: Okay the ones for the 6 th and the 13 th of September?

A: Yeah. Those two weeks.

Q: Okay.

A: And they rejected those two.

Q: Now the decision wasn't sent out until, when was it, October 29th. What was the reason you hung onto them so long?

A: The reason I hung onto them as (sic) I was advised by your office in Fargo that I could either file them then or I could file them after the determination and I'd been turned down four times and I didn't figure that I was gonna win. I thought I had lost.

. . . .

Q: Now you said that after you got the cards sir, for the 6 th and the 13 th, now they were due to be mailed by September 22nd, I believe.

A: Well I waited until after I heard from the hearing is what I did.

Q: Well no, my question is, is the cards were due before you were disqualified from benefits.

A: I know that. But they—I'd been turned down a bunch of times and I thought I wasn't going to get anything—

. . . .

Q: Okay. I think the way it looks then, these cards actually would have been due by September 29 th and then just three days later you received that letter stating that you were disqualified, dated October 2 nd. Did you take that determination into the local office, into the Fargo office?

A: Yes I did.

Q: And at that point in time you still hadn't filed the cards then?

A: No.

Q: Okay and so that's when they told you, at least that's what you understood is that you could file them right away or wait till your appeal period.

A: Yeah.

[¶ 8] There were two hearings in the present case. The first involved an appeal from Job Service's initial determination denying Powers unemployment compensation benefits. The second hearing addressed whether Powers should be disqualified from receiving benefits because he did not timely send his claim card to Job Service. Powers' excuse for not sending in the claim card was that a Job Service interviewer informed him he could wait until after a determination was made on the initial appeal before filing the card. In its decision denying benefits, Job Service concluded Powers received the card and further concluded the late filing was not excused because:

The evidence in the record shows that the claimant's claim card for the weeks in question was due on or before September 29, 1997. Prior to that date, the claimant had not received notification that he would be disqualified from job insurance benefits. The claimant did not receive the determination that he was disqualified from benefits until after October 2, 1997. Therefore, the fact that the claims interviewer may have instructed the claimant to wait until after the hearing to file his claim card is moot since the claim card was already late at the time the claimant received the determination which disqualified him from job insurance benefits. After considering all the facts in this case, it must be concluded that the claimant has not established that he had good cause for failing to return the claim card in a timely manner.

[¶ 9] There is no evidence, other than the testimony of Powers, concerning the initial hearing for unemployment compensation benefits and when that decision was made. The hearing officer referred to the decision, but did not include it in the rec-

ord. We believe a fair reading of the record shows, except for one answer to a leading question, that Powers and Job Service may have been referring to different times when Powers was told he did not have to submit the card until after the initial determination had been made. As a result, it is not clear to us when Powers was allegedly informed by a Job Service employee that he did not need to send in the claim card until after a determination had been made. Therefore, Job Service's finding Powers did not have good cause for filing the claim card late because it was already overdue by the time he received the state's disqualification notice is not responsive to Power's claim he was told he did not need to file the claim card until later.

### III

[¶ 10] We conclude that while there is arguably enough evidence in the record to prove Powers received the claim card, the issue of good cause remains unresolved on the record before us. We, therefore, reverse the judgment of the district court and remand the case to Job Service for a new hearing on whether Powers did, in fact, have good cause for not timely filing the claim card.

[¶ 11] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN, DALE V. SANDSTROM, JJ., concur.