**JoAnn PERSKE, Petitioner and Appellant,**

v.

**JOB SERVICE NORTH DAKOTA and Shelley D. Townsend, Respondents and Appellees.**

**Civ. No. 10390.**

Supreme Court of North Dakota.

June 30, 1983.

Michael C. O'Neel, Fargo, for petitioner and appellant.

Michael J. Wilma, Asst. Atty. Gen., Job Service N.D., Bismarck, for respondents and appellees.

PAULSON, Justice.

This is an appeal by JoAnn Perske from an order which affirmed a decision of Job Service of North Dakota denying Perske unemployment benefits because she was discharged from her previous employment for reasons that constituted misconduct. We affirm.

Perske was employed as a dental assistant by Dr. Shelley D. Townsend, a Fargo dentist, from September 1, 1980, to May 15, 1981. Although paid by Dr. Townsend, Perske also assisted Dr. Reed E. Sanford in his dental practice. Dr. Sanford had previously hired Perske as an assistant from September 1979 to May 1980. After Dr. Townsend discharged Perske in May 1981, Dr. Townsend stated in a letter to Job Service that Perske was discharged for "general misconduct", including arriving for work from fifteen minutes to one and one-half hours late twenty-nine times; for incorrectly recording time on her time cards four times; and for being absent from work three times without informing Dr. Townsend. Perske contends that it was usual practice for her to arrive late, to leave when not needed, and to only notify another assistant that she would be absent. According to Perske Dr. Townsend did not inform her that she did not approve of Perske's work practices until Dr. Townsend discharged her. Perske also contends that the incorrectly recorded time cards were clerical errors that were later discovered and corrected.

After being discharged Perske filed a claim for unemployment compensation benefits. A Job Service claims deputy found that Perske was disqualified because, according to Dr. Townsend, she had been discharged from her previous employment for misconduct. After a hearing an appeals referee affirmed the disqualification. In response to Perske's request, the executive director of Job Service reviewed the record

and affirmed the appeals referee. Perske then appealed to district court. The judge remanded the case to Job Service for another hearing because Perske had not been initially afforded a fair hearing, as required by § 28–32–19(4) of the North Dakota Century Code. After the second hearing Job Service affirmed its initial decision to deny Perske benefits. That Job Service decision states, in part:

"The actions of JoAnn Perske indicate an intentional and substantial disregard of her employer's interests and of the standards of behavior which the employer has the right to expect of the employee. Therefore, it must be concluded that she was discharged for reasons which constitute misconduct."

Perske again appealed to district court. After reviewing the record the judge determined (1) that a preponderance of the evidence supported the finding of fact that Perske was guilty of misconduct and (2) that the conclusion of Job Service that Perske is not entitled to unemployment benefits was supported by its findings of fact. Perske then appealed the district judge's order affirming Job Service's decision to this court.

Section 28–32–19, N.D.C.C., controls the scope of our review of an administrative agency determination. The factual basis of an administrative order is reviewed in a limited manner by considering the following questions: "(1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law?" *Asbridge v. North Dakota State Highway Com'r,* 291 N.W.2d 739, 743 (N.D.1980). In an appeal from a decision of an administrative agency, we review the decision of the agency and look to the record compiled by the agency. *Application of Nebraska Public Power Dist.,* 330 N.W.2d 143, 146 (N.D.1983). This court exercises restraint when reviewing agency findings; we do not substitute our judgment for that of the agency. *Asbridge, supra* 291 N.W.2d at 744.

The North Dakota Legislature has recognized that involuntary unemployment creates hardships for unemployed workers and has created a system of unemployment insurance for workers who become unemployed through no fault of their own. *See* §§ 52–01–05 and 52–02–01, N.D.C.C. An individual is disqualified from recovering benefits, however, "after he has been discharged for misconduct in connection with his last employment". § 52–06–02(2), N.D.C.C. In an appeal such as this, the issue is not whether or not the employer had the right to discharge the employee, but rather the issue is whether or not Job Service is justified in denying benefits for the conduct in question.

The term "misconduct" is not defined in North Dakota unemployment compensation law. The most widely accepted definition of "misconduct" is found in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941). In *Boynton,* the Wisconsin Supreme Court considered language similar to that found in § 52–06–02(2), N.D.C.C. The Wisconsin Supreme Court noted the public policy of cushioning the effect of unemployment by a series of benefit payments and determined that this policy would be defeated if mere mistakes, errors in judgment, and unintentional carelessness were considered to be within the definition of "misconduct". The Wisconsin court construed the unemployment statute in a manner least favorable to working a forfeiture to the unemployed individual and stated that the term "misconduct" in the unemployment statute

"... is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere

inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute." *Boynton, supra* 296 N.W. at 640.

*See generally* 81 C.J.S. *Social Security* § 222(b); 76 Am.Jur.2d *Unemployment Compensation* § 52.

In the instant case, Job Service's main contention, with which Dr. Townsend agrees, is that Perske's history of tardiness and unexcused absences constitutes conduct revealing a willful or wanton disregard of Dr. Townsend's interests. According to *Boynton, supra,* conduct which shows such willful or wanton disregard may consist of carelessness or negligence of the specified degree or recurrence or deliberate disregard of standards which the employer has the right to expect the employee to maintain.

 The evidence in the record in the instant case shows that Perske's actions were deliberate violations evincing a willful disregard of Dr. Townsend's interests. Perske stated the following on a form submitted to Job Service:

"I have been working there for 2 years. I was almost always late. I was to be there at 8:30 A.M., however I would get there about 8:35 or 8:40 because the doctors didn't get there until 9:00 A.M. If I would get there at 8:30 A.M. I would just be sitting around drinking coffee with the other girls."

This statement shows that Perske's tardiness was intentional and that she knew what her employer expected of her. In addition, Dr. Townsend testified that Perske's absences made it impossible for her to see patients during those times. Perske's misconduct did not consist of a single incident, but rather it consisted of persistent tardiness without reasonable excuse and unexcused absences without reasonable notice.

A recent annotation collecting cases dealing with the effects of a discharge because of absenteeism or tardiness on an employee's right to unemployment compensation benefits states the following general rule:

"Under statutes providing that unemployment compensation benefits are to be denied or delayed to one whose unemployment results from discharge for wilful misconduct, it has been held or recognized, as a general principle, that persistent or chronic absenteeism or tardiness, at least where the absences are without notice or excuse, or the tardiness is without reasonable excuse, or the absence or tardiness is continued in the face of warnings by the employer, constitutes wilful misconduct within the meaning of the statutes, precluding payment of benefits upon discharge." 58 A.L.R.3d 674, p. 685.

*See generally* 76 Am.Jur.2d *Unemployment Compensation* § 58; 81 C.J.S. *Social Security* § 223. We believe that this case fits within that rule. We agree with the trial court that Job Service correctly determined that a preponderance of the evidence in the record shows that Perske's actions constituted misconduct and that, as a result, she is not entitled to unemployment benefits.

 Perske argues, though, that there can be no misconduct in this case because Perske was not warned that she would be discharged for her behavior. Perske cites the case of *Ortiz v. Unemployment Insurance Appeal Board,* 317 A.2d 100 (Del.1974). In *Ortiz,* the employee was absent 39 days and late 41 days during several months after his wife became seriously ill and unable to perform housework and care for the Ortiz children. The employer knew of the reasons for Ortiz's absences. He assisted Ortiz in acquiring a "mother's helper" and adjusted Ortiz's schedule to more convenient hours. *Ortiz v. Unemployment Insurance Appeal Board,* 305 A.2d 629, 630 (Del. Super.Ct.1973), *rev'd* 317 A.2d 100 (Del. 1974). The Delaware Supreme Court did require that the employer give Ortiz a warning before discharging him. However, the court stated that the Ortiz circumstances were "exceptional", calling for a warning that the employer's tolerance of the tardiness and absences was at an end. The

Delaware Supreme Court stated: "Our decision today should not be construed as holding that a warning is required in every instance before a discharge for absenteeism or tardiness is valid." *Ortiz, supra* 317 A.2d at 101. Although an advance warning is a factor to consider, it is not a prerequisite to a discharge for willful misconduct. *See Blystone v. Unemployment Compensation Board of Review,* 17 Pa.Cmwlth. 180, 342 A.2d 772 (1975).

Perske also argues that even if willful misconduct is found, Dr. Townsend should be estopped from asserting it because of her acquiescence. Just because Dr. Townsend did not take action sooner does not mean that she approved of Perske's conduct. In most cases in which an employee has been discharged for tardiness or absenteeism, the employer has tolerated a certain amount of the employee's misconduct before discharging the employee. *See Ortiz, supra* 305 A.2d at 631. Section 52–06–02(2), N.D.C.C., clearly provides that an individual who was discharged from a previous past employment for misconduct will be disqualified from receiving benefits. There are no exceptions in the statute. Also, the equitable doctrine of estoppel is intended to aid innocent parties, not to uphold a wrong of any character. *See Alder v. Mountain States Telephone & ·Telegraph,* 92 Idaho 506, 446 P.2d 628, 633–634 (1968). Perske cannot use the doctrine of estoppel to prevent Dr. Townsend from asserting Perske's misconduct and resulting disqualification for unemployment benefits.

For the reasons stated in this opinion we affirm the district court's order affirming the decision of Job Service disqualifying Perske from receiving benefits as a result of her discharge from employment for misconduct, pursuant to § 52–06–02(2), N.D. C.C.

ERICKSTAD, C.J., and PAULSON, PEDERSON, VANDE WALLE and SAND, JJ., concur.