2004 ND 27

**Sheila K. BAIER, Petitioner and Appellant**

v.

**JOB SERVICE NORTH DAKOTA, and Prairie Chicken Inc. d/b/a Big Boy, Respondents and Appellees.**

No. 20030287.

Supreme Court of North Dakota.

Jan. 28, 2004.

Bradley D. Peterson, Legal Services of North Dakota, Bismarck, N.D., for petitioner and appellant.

Kevin McCabe, Assistant Attorney General, Attorney General's Office, Bismarck, N.D., for respondent and appellee Job Service North Dakota.

Kent M. Morrow, Severin, Ringsak & Morrow, Bismarck, N.D., for respondent and appellee Prairie Chicken Inc. d/b/a Big Boy.

VANDE WALLE, Chief Justice.

[¶ 1] Sheila K. Baier appealed from a judgment of the district court affirming Job Service North Dakota's denial of her application for unemployment benefits. We hold the agency's decision that Baier was discharged from her job for misconduct, thereby disqualifying her from receiving unemployment benefits, is sup-

ported by a preponderance of the evidence, and we affirm.

I

[¶ 2] On October 6, 2001, Baier, currently age 37, began employment as a customer service worker with Prairie Chicken, Inc., doing business as Big Boy in Bismarck. The business is a fast-food restaurant and, as a customer service worker, Baier would pack chicken for orders, make drinks, sweep the floors, stock supplies, wash dishes, and do other similar duties. In December 2002, Baier complained to Donald Brandt, the restaurant's manager who also supervised Baier, that a coworker, currently age 18, "was picking on her and calling her names." Brandt met with Baier and the coworker on December 31, 2002. He instructed them to stay away from each other, and he scheduled them to begin working different shifts. He also told the coworker to stop the harassing conduct.

[¶ 3] Baier continued to feel she was being harassed by the coworker. She did not inform Brandt about it, but on January 7, 2003, she filed a complaint with local law enforcement. The police investigated the matter and visited about it with Brandt and other employees at the business. On January 16, 2003, the police department informed Baier there was inadequate support for her complaint and the officers would not pursue the matter any further. Baier became angry and placed a telephone call to Brandt on that day. During the telephone conversation, she told Brandt he had lied to the police and also had caused other employees to lie to the police. She told Brandt she would not allow him to date her or to be her boyfriend. Brandt immediately informed Baier that she was being terminated and that she need not come back to work.

[¶ 4] After she was terminated, Baier applied for unemployment benefits. The application was initially accepted and the employer requested a review. After an evidentiary hearing, an administrative referee determined Baier was terminated for misconduct on the job which disqualified her from receiving unemployment benefits. The case was appealed to the district court, which affirmed the agency's decision.

II

[¶ 5] On appeal, Baier asserts Job Service erred in concluding her statements made to the manager during the January 16, 2003, phone call constituted misconduct for purposes of disqualifying her from receiving unemployment compensation benefits. The unemployment compensation program is a joint federal-state system in which each state receives federal funds and administers the program. *Morris v. Job Service North Dakota*, 2003 ND 45, ¶ 6, 658 N.W.2d 345. The dual objectives of unemployment compensation are to soften the harsh impact of involuntary unemployment and the competing objective of protecting employers from "quits" that have nothing to do with the employer or the employment and from dismissals based upon employee misconduct. *Johnson v. Job Service North Dakota*, 1999 ND 42, ¶ 10, 590 N.W.2d 877. A person is disqualified from receiving unemployment benefits under N.D.C.C. § 52–06–02(2) if discharged for misconduct in connection with employment. *Stalcup v. Job Service North Dakota*, 1999 ND 67, ¶ 7, 592 N.W.2d 549. Although not defined by statute, the term "misconduct" is defined in our caselaw:

> Misconduct is limited to conduct evincing such wilful [sic] or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employ-

er has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

*Id.*

[¶ 6]   In an appeal from an administrative agency decision, we review the decision of the administrative agency, rather than that of the district court, although the district court's analysis is entitled to respect. *Wanner v. North Dakota Workers Compensation Bureau*, 2002 ND 201, ¶ 8, 654 N.W.2d 760.   Under N.D.C.C. §§ 28–32–46 and 28–32–49, we affirm an agency's decision unless (1) the decision is not in accordance with the law; (2) the decision violates the appellant's constitutional rights; (3) the provisions of N.D.C.C. ch. 28–32 have not been complied with in the agency's proceedings; (4) the agency's rules or procedure have not afforded the appellant a fair hearing; (5) the agency's findings of fact are not supported by a preponderance of the evidence; (6) the agency's conclusions of law are not supported by its findings of fact; (7) the agency's findings of fact do not sufficiently address the evidence presented by the appellant; or (8) the agency's conclusions of law do not sufficiently explain its rationale for not adopting any contrary recommendations by a hearing officer or administrative law judge. *Id.*

[¶ 7]   When reviewing an agency decision that an employee was terminated for misconduct disqualifying that employee from receiving unemployment compensation benefits, we utilize the following standards:

The nature of the employment is a consideration when deciding whether an employee's conduct constitutes misconduct.   The issue is a mixed question of fact and law.   The evidence must support its findings of fact which, in turn, must sustain its conclusion regarding misconduct.   If confronted with disputed facts, we defer to Job Service's factual conclusions and ascertain only whether a reasoning mind could have reasonably determined the factual conclusions were proven by a preponderance of the evidence.   However, when the facts are undisputed, and contradictory inferences cannot reasonably be drawn from those undisputed facts, we review the legal conclusion anew.

*Johnson*, 1999 ND 42, ¶ 12, 590 N.W.2d 877 (citations omitted).

[¶ 8]   Brandt testified at the administrative hearing that after Baier accused him of lying and also of causing other employees to lie to the police he terminated her, because he believed Baier's attitude would make it difficult for her to continue working in the office with others. He testified the job requires the employees to work as a team and he did not believe other employees could continue to work with Baier after she had accused them of lying.

[¶ 9]   The issue of Baier's perceived harassment by another coworker was promptly dealt with by Brandt when she informed him of the problem in December 2002.   He discussed the issue, told the coworker to stop the behavior, and assigned Baier and the coworker to different work shifts.   Thereafter, Baier felt the harassment was continuing, but she testified that she did not inform Brandt of the coworker's continued misconduct because "I just felt like he wouldn't listen to me." Baier also testified that, after she had made the accusations to Brandt about his lying to the police and causing others to lie to them, she reviewed the police report and realized that Brandt had not lied and

she was "not sure" that he had caused others to lie to the police. She testified that her telephone comment about not allowing Brandt to ever be her boyfriend "came out of nowhere" and she said it because she was upset with the police report.

[¶ 10] The administrative referee made the following specific findings:

[T]he greater weight of the evidence in the record gives rise to a determination that the claimant deliberately violated a standard of behavior that she owed the employer as its employee. The claimant was deliberate in her actions in not only accusing the employer of lying to the police, but also encouraging other employees to lie to the police as well. The claimant knew what she was saying was damaging to the employer's character and harmful to a productive workplace. The claimant did not establish that the co-worker's alleged harassment continued after the December 2002 conference. The claimant did not attempt to bring any issues of continuing harassment to the employer's attention after the December 2002 conference. The claimant's statements caused irreparable harm to the employee/employer relationship.

These findings were adopted and accepted by the agency and later affirmed by the trial court. We conclude that a reasoning mind could have reasonably determined the factual conclusions were proven by a preponderance of the evidence. The underlying facts are not disputed and contradictory inferences cannot reasonably be drawn from those undisputed facts, and we, therefore, review anew the legal conclusion that Baier's actions constituted disqualifying misconduct. *Johnson*, 1999 ND 42, ¶ 12, 590 N.W.2d 877.

[¶ 11] Misconduct exists where the employee displays a willful or wanton disregard of the employer's interest. *Hjelden*, 1999 ND 234, ¶ 8, 603 N.W.2d 500. An employee who deliberately violates or disregards standards of behavior which the employer rightfully expects is guilty of disqualifying misconduct. *Medcenter One, Inc. v. Job Service North Dakota*, 410 N.W.2d 521, 523–24 (N.D.1987). When the police informed Baier that her complaint was not going to be pursued, she called Brandt, on January 16, 2003, and accused him and other employees of lying to the police, thereby sowing seeds of confrontation among the workforce. Baier admits her accusations that Brandt and other employees lied were not supported by the police report, which she failed to review until after she had placed the phone call and made the accusations. Furthermore, Baier admits that her inferential reference of sexual misconduct by Brandt in saying that he could never be her boyfriend "came out of nowhere." We conclude this conduct by Baier constituted more than an isolated episode of poor judgment. *See Hulse v. Job Service North Dakota*, 492 N.W.2d 604, 608 (N.D.1992). Rather, Baier's conduct evinces a willful and deliberate disregard of standards of behavior which her employer had the right to expect of an employee and shows an intentional and substantial disregard of her employer's interests and of her own duties and obligations to the employer.

III

[¶ 12] We conclude the findings of Job Service are supported by a preponderance of the evidence and its legal conclusion that Baier's actions constituted disqualifying misconduct is supported by the findings. We, therefore, affirm the district court judgment upholding Job Service's denial of Baier's application for unemployment compensation benefits.

[¶ 13] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.