2006 ND 155

**SPECTRUM CARE LLC, Petitioner and Appellant**

v.

**Marlene F. STEVICK, Respondent**

and

**Job Service North Dakota, Respondent and Appellee.**

**No. 20060018.**

Supreme Court of North Dakota.

July 18, 2006.

Lynn M. Boughey, Boughey Law Firm, Minot, N.D., for petitioner and appellant.

Zachary Evan Pelham, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for respondent and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Spectrum Care appealed from a district court judgment affirming a Job Service decision concluding Spectrum discharged Marlene Stevick for reasons that did not constitute misconduct and awarding her unemployment compensation benefits. We hold Job Service's decision that Stevick was not discharged from her job for misconduct is supported by a preponderance of the evidence, and we affirm.

I

[¶ 2] Stevick began working for Spectrum in September 2001 as a full-time activity aide at Spectrum's long-term residential care facility. Her primary duties were coordinating activities for the residents and helping in the dining room. The Spectrum facility has an emergency call system that residents can activate from their rooms for help, setting off a light and alarm in an office area alerting staff that a resident needs emergency assistance. Spectrum's facility also has a telephone in the area near the lights for the emergency call system.

[¶ 3] In October 2003, Stevick was terminated from her job as an activity aide, because she had taken a cigarette break and left the emergency call system unattended. According to Spectrum, a resident service aide specifically asked Stevick to watch the emergency call system while the two on-duty resident service aides assisted a resident. According to Spectrum, when the two resident service aides returned from helping the resident, they discovered Stevick had left the building to take a break and the emergency call system had been left unattended. Spectrum stated its employees have been instructed that there must always be someone attending the emergency call system and anyone leaving the system unattended would be terminated.

[¶ 4] According to Stevick, she was asked by the resident service aide "to only listen for the telephone, not watch for the

emergency call lights." Stevick testified she did not know that specific request could also mean she was to monitor the emergency call system. Stevick testified she was preparing an activity for residents in an activity room near the area with the lights for the emergency call system when she was asked by the resident service aide to "listen for the telephone." She testified no residents joined her for the scheduled activity, and she then left the building for a cigarette break, leaving the telephone and the emergency call system unmonitored. Stevick testified she believed she was only responsible for listening for the telephone and she thought the second resident service aide was in a separate room monitoring the emergency call system. She testified she was unaware that Spectrum had a policy requiring her to monitor the emergency call system and her momentary lapse was unintentional.

[¶ 5] Stevick filed a claim for unemployment compensation benefits. A Job Service deputy decided Stevick was entitled to unemployment benefits, because her actions did not constitute misconduct for purposes of disqualifying her from receiving unemployment compensation benefits. Spectrum requested an administrative hearing. After a hearing, an appeals referee affirmed the deputy's decision that Stevick's conduct did not preclude her from receiving unemployment benefits, and Job Service thereafter affirmed the referee's decision.

[¶ 6] Spectrum appealed Job Service's decision to the district court, which initially remanded the case to Job Service for the presentation of additional evidence. After an additional hearing on remand, the appeals referee determined that Spectrum did not establish by a preponderance of the evidence that Stevick's conduct constituted misconduct for purposes of disqualifying her for unemployment benefits. The referee found the residential service aide asked Stevick to listen for the telephone, and because Stevick believed a second residential service aide was available to watch the emergency call system, it was reasonable for her to assume that the request was limited to listening for the telephone. The referee specifically noted the residential service aide who asked Stevick to listen for the telephone did not testify at the hearings and the referee therefore relied on Stevick's testimony about the scope of the request. The referee thus concluded Stevick was not terminated for misconduct and was entitled to unemployment compensation benefits. Job Service affirmed the referee's decision, and the district court affirmed Job Service's decision.

## II

[¶ 7] Spectrum argues Stevick's actions in taking a cigarette break and leaving the emergency call system unattended constituted misconduct as a matter of law and disqualified her from receiving unemployment benefits. Spectrum alternatively argues Job Service's findings are not supported by a preponderance of the evidence.

[¶ 8] Although the district court's analysis is entitled to respect, in an appeal from a decision by an administrative agency, we review the agency's decision, rather than the district court's decision. *Baier v. Job Serv.*, 2004 ND 27, ¶ 6, 673 N.W.2d 923. Under N.D.C.C. §§ 28-32-46 and 28-32-49, we affirm an agency's decision unless (1) the decision is not in accordance with the law; (2) the decision violates the appellant's constitutional rights; (3) the provisions of N.D.C.C. ch. 28-32 have not been complied with in the agency's proceedings; (4) the agency's rules or procedure have not afforded the appellant a fair hearing; (5) the agency's findings of fact are not supported by a preponderance of the evidence; (6) the agency's conclusions

of law are not supported by its findings of fact; (7) the agency's findings of fact do not sufficiently address the evidence presented by the appellant; or (8) the agency's conclusions of law do not sufficiently explain its rationale for not adopting any contrary recommendations by a hearing officer or administrative law judge. *Baier*, at ¶ 6.

[¶ 9] In *Baier*, 2004 ND 27, ¶¶ 5–7, 673 N.W.2d 923, we outlined the standard for analyzing employee misconduct in the context of claims for unemployment benefits:

> A person is disqualified from receiving unemployment benefits under N.D.C.C. § 52–06–02(2) if discharged for misconduct in connection with employment. *Stalcup v. Job Service North Dakota*, 1999 ND 67, ¶ 7, 592 N.W.2d 549. Although not defined by statute, the term "misconduct" is defined in our caselaw:

> > Misconduct is limited to conduct evincing such wilful [sic] or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

> *Id.*

> . . . .

> When reviewing an agency decision that an employee was terminated for misconduct disqualifying that employee from receiving unemployment compensation benefits, we utilize the following standards:

> > The nature of the employment is a consideration when deciding whether an employee's conduct constitutes misconduct. The issue is a mixed question of fact and law. The evidence must support its findings of fact which, in turn, must sustain its conclusion regarding misconduct. If confronted with disputed facts, we defer to Job Service's factual conclusions and ascertain only whether a reasoning mind could have reasonably determined the factual conclusions were proven by a preponderance of the evidence. However, when the facts are undisputed, and contradictory inferences cannot reasonably be drawn from those undisputed facts, we review the legal conclusion anew.

> *Johnson [v. Job Serv.]*, 1999 ND 42, ¶ 12, 590 N.W.2d 877 (citations omitted).

[¶ 10] The employer has a burden to establish by a preponderance of the evidence that a terminated employee's actions constitute misconduct that disqualifies the employee from receiving unemployment compensation benefits. *Schadler v. Job Serv.*, 361 N.W.2d 254, 257 (N.D. 1985). Conduct that is grounds for dismissal does not necessarily preclude the employee from receiving unemployment benefits. *Perske v. Job Serv.*, 336 N.W.2d 146, 148 (N.D.1983). The determination of whether an employee's actions constitute misconduct depends on the facts and circumstances of each case. *Blueshield v. Job Serv.*, 392 N.W.2d 70, 73 (N.D.1986). One incident of bad judgment can be disqualifying misconduct if it results in a violation of an important employer interest or explicit policy. *Tehven v. Job Serv.*, 488 N.W.2d 48, 52 (N.D.1992); *Schadler*, 361 N.W.2d at 257.

[¶ 11] Monitoring an emergency call system at a long-term residential care facility represents an important employer interest. *See Tehven*, 488 N.W.2d

at 52; *Schadler*, 361 N.W.2d at 257. Here, however, there is disputed evidence about whether Stevick was asked only to listen for the telephone, or to monitor the emergency call system. Job Service adopted the hearing officer's findings that Stevick was asked only to listen for the telephone and that she believed a second resident service aide was monitoring the emergency call system when Stevick went for a cigarette break. Although Spectrum relies on evidence that the resident service aide specifically asked Stevick to monitor the emergency call system, Spectrum introduced into evidence only a written statement by that resident service aide and she did not testify at the administrative hearings. When faced with conflicting testimony, the referee's job as factfinder is to ascertain the weight to be given the evidence. *Lovgren v. Job Serv.*, 515 N.W.2d 143, 145 (N.D.1994). In reviewing an agency decision, we do not determine whether the referee was correct in its findings; rather, we decide whether a reasoning mind reasonably could have determined whether the referee's factual conclusions were proved by the weight of the evidence. *Id.* Job Service and the appeals referee were entitled to weigh the evidence and rely upon Stevick's testimony rather than the written statement of the resident service aide.

[¶ 12] Based on Stevick's testimony, a reasoning mind could reasonably conclude the resident service aide told Stevick to watch only the telephone, Stevick thought a second resident service aide was watching the emergency call system, and Stevick was not aware that she was required to monitor the emergency call system. The hearing officer found Stevick was asked only to listen for the telephone and that finding supports Job Service's conclusion that Stevick's conduct did not evince an intentional or deliberate disregard of Spectrum's interests and standards of behavior, or conduct manifesting an equal culpability and that Stevick was not discharged for misconduct, which in turn supports Job Service's decision awarding Stevick unemployment compensation benefits. We decline Spectrum's request to effectively reweigh the evidence or rule as a matter of law that Stevick's actions constitute misconduct and disqualify her from receiving unemployment compensation benefits.

### III

[¶ 13] We conclude Job Service's findings are supported by a preponderance of the evidence and its legal conclusion that Stevick's actions did not constitute disqualifying misconduct is supported by the findings. We therefore affirm the district court judgment upholding Job Service's decision granting Stevick unemployment compensation benefits.

[¶ 14] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.