2008 ND 188

**Janis SCHMIDT, Petitioner and Appellant**

v.

**JOB SERVICE NORTH DAKOTA and Warwick Public School District # 29, Respondents and Appellees.**

No. 20080071.

Supreme Court of North Dakota.

Oct. 22, 2008.

Barry A. Bachrach (argued), Law Office of Barry A. Bachrach, Leicester, MA, and Janis Schmidt (on brief), Warwick, ND, for petitioner and appellant.

Douglas Alan Bahr, Solicitor General, Office of Attorney General, Bismarck, N.D., for respondent and appellee Job Service North Dakota.

Tiffany L. Johnson (argued) and Gary R. Thune (on brief), Pearce & Durick, Bismarck, N.D., for respondent and appellee Warwick Public School District # 29.

VANDEWALLE, Chief Justice.

[¶ 1] Janis Schmidt appealed from a judgment affirming Job Service North Dakota's order denying her unemployment benefits after Job Service decided the Warwick Public School District terminated her employment for misconduct. We hold that a reasoning mind could reasonably find Schmidt deliberately disregarded her employer's interests and violated standards the employer had a right to expect from her; that finding supports the conclusion Schmidt was not entitled to unemployment compensation benefits because she was discharged from her job for disqualifying misconduct. We affirm.

I

[¶ 2] The Warwick Public School District hired Schmidt to teach English and Art for the 2006–2007 school year. According to Schmidt, in the fall of 2006, she reported to the school's administration that two students had been raped. Schmidt asserts the administration did not appropriately handle the reports, and she claims she was fired from her job in retaliation for reporting the rapes.

[¶ 3] The Warwick Public School District asserts it did not renew Schmidt's teaching contract, because she repeatedly and deliberately refused to teach the school's prescribed curriculum and injected her personal views into the curriculum. In December 2006, Schmidt's immediate supervisor, Principal Gene Riedinger, conducted a performance evaluation of Schmidt. That evaluation noted several areas that needed improvement, including: her lessons were confusing, she did not follow the school's curriculum objectives and taught from her point of view, her lesson plans were not handed in promptly, she had trouble following the chain of command, she did not enforce rules equally in her classroom, and she was late for many meetings. Schmidt "contest[ed the] evaluation report in its entirety," stating Riedinger had "personal bias and prejudice" against her and seeking to be "reevaluated by an impartial qualified person."

[¶ 4] According to the Warwick School District Superintendent, Charles Guthrie, Schmidt was placed on paid administrative leave for the afternoon of January 4, 2007, because:

Ms. Schmidt had talked about a student or students being raped at the school and claiming that nothing had been done and in fact the rape that she was talking about happened during the summer time and that was followed up on and ... kids were dropping out of her class because she was not just talking Native American culture, but the issues that she was talking about such as Leonard Peltier, Wounded Knee, AIM, and she was even talking to the students about her personal law suits in South Dakota against that tribe and there was a teacher who had a son here who is non Native that was even beginning to feel safety reasons, concerns, and also, we do have a chain of command policy that's approved by the board which she was not following and she was making allegations that she just, she just could not prove.

[¶ 5] On January 5, 2007, Guthrie met with Schmidt regarding her work performance, and as a result of that meeting,

Schmidt was required to follow five directives:

1. No contact, per parent's request, with [a student] or her parents.

2. Do not discuss matters such as your administrative leave with students during school time.

3. Teach what you have been hired to teach. Issues not pertaining to the curriculum are not to be discussed during school time. Reason: Students have been dropping your class because they are uncomfortable with your constant discussions about Native American issues that are not a part of your curriculum such as: Leonard Peltier, Wounded Knee, AIM, your personal lawsuit in South Dakota involving ... that Tribe. Safety concerns have been expressed by staff.

4. You will follow the chain of command policy, a copy of which is attached.

5. Do not make allegations that you cannot prove. Example: Making false allegations against administrators and counselor concerning a student rape which had been denied by the student and her parents.

[¶ 6] On January 29, 2007, Riedinger reported an incident to Guthrie in which Schmidt repeatedly refused to follow Riedinger's directives to allow other staff to use school art supplies for "Spirit Week." In February 2007, Guthrie arranged a meeting between Riedinger and Schmidt to discuss and resolve their concerns. According to Guthrie, the meeting did not resolve those concerns, and Guthrie informed Schmidt that she could file a formal grievance and explained the process for a grievance. Schmidt did not file a grievance, and, instead, wrote a February 11, 2007, letter to Guthrie, alleging Riedinger had a "personal vendetta" against her and Riedinger was using Schmidt's seventh grade class to try "to set [her] up." In that letter, Schmidt presented a list of eight "non-negotiable" demands and said if those conditions were not met, she would contact all the school board members, the state practices and standards board, and the media. Guthrie informed Schmidt in writing that her demands were "unacceptable" and that he was assuming the role of her immediate supervisor.

[¶ 7] On March 9, 2007, Guthrie conducted an evaluation of Schmidt in which he recorded numerous areas in which Schmidt needed improvement, including that she was not utilizing the prescribed textbook for one class, her lessons for that class were fragmented, her lesson plans were either incomplete or inadequate, she was spending "an excessive amount of time on the cultural aspect of Native Americans and not enough time on approved curriculum," she was tardy for classes, and she was not communicating effectively with parents. Guthrie's evaluation stated:

I have been contacted by parents of students who are upset and disapproving regarding your professionalism when meeting with them. You visited negatively and unprofessionally with a parent regarding your disagreements with administration and negatively with a parent regarding her child's choice of career after graduation. You have adversely affected parents of female students regarding alleged rapes that are ungrounded. I have been notified by parents to remove their children from your classes with no contact by you with their children. You need to be diplomatic when visiting verbally or in writing with parents. Improvement in this area is needed.

The concerns that you have with the secondary principal, resulting in my assuming the role as your immediate su-

pervisor, indicates to me that you cannot work effectively with administrators.

You have made the accusations against staff regarding alleged rape incidents that are ungrounded. You have had confrontations with other teachers indicating to me that you cannot work effectively with other teachers. Improvement in this area is required.

Schmidt objected to the evaluation, claiming Guthrie was biased against her. She claimed the evaluation was retaliation against her for reporting the rapes to authorities and the evaluation was a "crock" and should be disregarded in its entirety. She then indicated she was "calling a higher authority to investigate Warwick School."

[¶ 8] On March 20, 2007, an elementary principal conducted another evaluation of Schmidt. The elementary principal noted concerns similar to those expressed in Schmidt's earlier evaluations.

[¶ 9] On March 20, 2007, Guthrie informed Schmidt that he was recommending to the Warwick School Board that her teaching contract not be renewed based on her performance evaluations. On March 21, 2007, the Warwick School Board notified Schmidt that it would consider not renewing her contract for the coming school year, identifying three reasons for the possible non-renewal:

1. Inability to provide classroom management and discipline necessary for effective teaching;
2. Inability to provide and implement appropriate classroom learning experiences, consistent with North Dakota Content Standards in English and Art Classes; and
3. Inability to establish and maintain a professional and appropriate working relationship with parents, administrators, and staff.

The notice advised Schmidt that the Warwick School Board would hold a special meeting to consider the contemplated non-renewal on March 27, 2007, and said the school board would discuss and determine whether the reasons for non-renewal had been substantiated by written or oral evidence presented at the meeting. *See* N.D.C.C. § 15.1–15–06 (outlining requirements for non-renewal hearing).

[¶ 10] On March 22, 2007, Guthrie received a letter from the Spirit Lake Tribal Chairwoman, outlining her concerns regarding Schmidt's conduct as a teacher. The letter stated, in part:

I have recently been contacted by a number of tribal members regarding concerns over the conduct of Janice Schmidt, the art teacher at Warwick school. The parents that have contacted me have expressed concerns over the negative influence that she is having on their children, the curriculum that she is teaching in class and the manner in which she conducts herself towards parents. From the conduct that has been described to me I too have concerns in regards to the curriculum as well as the safety and well being of the children.

[¶ 11] Schmidt did not attend the March 27, 2007, school board meeting, and the non-renewal hearing as conducted in executive session. *See* N.D.C.C. § 15.1–15–06(6) (unless both parties agree, non-renewal hearings must be held in executive session). At the meeting, teachers, school administrators, and the tribal chairwoman appeared and testified. At that meeting, the Warwick School Board voted to not renew Schmidt's teaching contract, and on March 28, 2007, the Warwick Public School District provided Schmidt a notice of non-renewal of her contract for the 2007–2008 school year, effectively terminating her teaching contract at the end of the 2007 school year in May.

[¶ 12] Thereafter, concerns about Schmidt's teaching performance continued, and on April 11, 2007, after notice and a special meeting, the Warwick School Board voted to place Schmidt on administrative leave with full pay and benefits for the remainder of her 2006–2007 teaching contract.

[¶ 13] In July 2007, Schmidt filed a claim with Job Service for unemployment benefits. Job Service decided the reasons for Schmidt's non-renewal constituted misconduct and denied her claim for unemployment benefits. Schmidt appealed Job Service's decision, and after a hearing, a hearing officer affirmed the decision. The district court thereafter affirmed Job Service's decision.

## II

[¶ 14] Schmidt argues her conduct did not constitute misconduct because she was not terminated for cause. She claims she was fired in retaliation for reporting the rapes and the stated reasons for her dismissal were a pretext. She argues the hearing officer erroneously ignored evidence that she was discharged in retaliation for fulfilling her statutory obligation to report the rapes and "the hearing officer prevented any of [her] facts from becoming part of the record."

[¶ 15] In an appeal from an administrative agency decision, we review the decision of the administrative agency. *Baier v. Job Serv.*, 2004 ND 27, ¶ 6, 673 N.W.2d 923. Under N.D.C.C. §§ 28–32–46 and 28–32–49, we affirm an agency's decision unless:(1) the decision is not in accordance with the law; (2) the decision violates the appellant's constitutional rights; (3) the provisions of N.D.C.C. ch. 28–32 have not been complied with in the agency's proceedings; (4) the agency's rules or procedure have not afforded the appellant a fair hearing; (5) the agency's findings of fact are not supported by a preponderance of the evidence; (6) the agency's conclusions of law are not supported by its findings of fact; (7) the agency's findings of fact do not sufficiently address the evidence presented by the appellant; or (8) the agency's conclusions of law do not sufficiently explain its rationale for not adopting any contrary recommendations by a hearing officer or administrative law judge. *Baier*, at ¶ 6. When reviewing an agency's findings of fact, we do not make independent findings of fact or substitute our judgment for that of the agency. *Neubauer v. Job Serv.*, 512 N.W.2d 428, 431 (N.D.1994). Rather, we review the agency decision to determine whether a reasoning mind could have reasonably decided that the factual conclusions were proved by the weight of the evidence. *Id.*

[¶ 16] A person is disqualified from receiving unemployment benefits under N.D.C.C. § 52–06–02(2) if the person is discharged for misconduct in connection with employment. *Baier*, 2004 ND 27, ¶ 5, 673 N.W.2d 923; *Stalcup v. Job Serv.*, 1999 ND 67, ¶ 7, 592 N.W.2d 549. Although not defined by statute, our case law explains that "misconduct" is:

"limited to conduct evincing such wilful [sic] or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in iso-

lated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

*Perske v. Job Serv.*, 336 N.W.2d 146, 148–49 (N.D.1983) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941)).

[¶ 17] An employer has the burden of establishing by a preponderance of the evidence that a terminated employee's actions constitute misconduct that disqualifies the employee from receiving unemployment compensation benefits. *Schadler v. Job Serv.*, 361 N.W.2d 254, 257 (N.D. 1985). Conduct that is grounds for dismissal does not necessarily preclude the employee from receiving unemployment benefits. *See Perske*, 336 N.W.2d at 148–49. However, one incident of bad judgment can be disqualifying misconduct if it results in a violation of an important employer interest or explicit policy. *Tehven v. Job Serv.*, 488 N.W.2d 48, 52 (N.D.1992); *Schadler*, at 257. Hearing officers in unemployment compensation hearings are authorized to receive evidence which ordinarily is not admissible under the rules of evidence, but the administrative hearing must be conducted in a manner to ascertain the parties' substantial rights. *Stalcup*, 1999 ND 67, ¶ 11, 592 N.W.2d 549.

[¶ 18] In considering whether an employee was terminated for disqualifying misconduct, we have said:

> The nature of the employment is a consideration when deciding whether an employee's conduct constitutes misconduct. The issue is a mixed question of fact and law. "[T]he evidence must support its findings of fact which, in turn, must sustain its conclusion regarding misconduct." If confronted with disputed facts, we defer to Job Service's factual conclusions and ascertain only whether a reasoning mind could have reasonably determined the factual con-

clusions were proven by a preponderance of the evidence. However, when the facts are undisputed, and contradictory inferences cannot reasonably be drawn from those undisputed facts, we review the legal conclusion anew.

*Johnson v. Job Serv.*, 1999 ND 42, ¶ 12, 590 N.W.2d 877 (citations omitted).

[¶ 19] Under North Dakota law, public school teachers are contractual employees, and a school district may choose to non-renew a teacher's contract for the following year by instituting non-renewal proceedings under the procedures in N.D.C.C. §§ 15.1–15–04 through 15.1–15–06, or a school district may discharge a teacher for cause before the expiration of the contract under the procedures in N.D.C.C. §§ 15.1–15–07 through 15.1–15–11. Some courts have recognized that the reasons supporting a decision not to renew a teacher may also constitute misconduct. *See Cornell v. Review Bd. of Indiana Employment Sec. Div.*, 179 Ind.App. 17, 383 N.E.2d 1102, 1106–07 (1979); *Evans v. Montgomery County Bd. of Educ.*, 712 S.W.2d 358, 359 (Ky.Ct.App.1986); *Mississippi Employment Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist.*, 437 So.2d 388, 399 (Miss.1983). Under North Dakota law, the reasons for non-renewal ordinarily do not rise to the level of misconduct. *See* N.D.C.C. § 15.1–15–07 (authorizing discharge for identified causes before expiration of contract). However the definition of misconduct does not preclude a determination of disqualifying misconduct after a teacher has been non-renewed under the procedures in N.D.C.C. §§ 15.1–15–04 through 15.1–15–06, and the issue at the administrative hearing was whether Schmidt was terminated for reasons that constitute disqualifying misconduct.

[¶ 20] Here, the hearing officer heard some evidence supporting Schmidt's claim that she was discharged for reporting the rapes. However, the hearing offi-

cer also heard other evidence supporting the school district's claim that Schmidt's teaching contract was not renewed because she repeatedly and deliberately violated standards set by the Warwick Public School District and deliberately failed to comply with directives or instructions from the district. In assessing the evidence, the hearing officer was entitled to rely on third-party reports and hearsay statements that ordinarily may not have been admissible under the rules of evidence. *See Stalcup*, 1999 ND 67, ¶ 11, 592 N.W.2d 549. The hearing officer found:

In this case, the greater weight of the evidence in the record gives rise to a determination that the claimant deliberately violated a standard that she knew, or should have known, would result in the termination of her employment by deliberately failing to comply with directions or instructions from her employer. It is reasoned based on the diverse number of people who approached the employer and the tribal chairperson that the information relayed to the employer concerning the claimant's insubordination was true and accurate. This is held despite the claimant's denial. The result might have been different if there were only one or two children who complained. Indeed, the information that was supplied by the claimant herself in her letters and memorandums demonstrate that the claimant was insolent and unwilling to yield to the reasonable directives of the employer. A teacher who resigns rather than proceed through a non-renewal hearing is deemed to have left the teacher's employment voluntarily and without good cause. *See Six v. Job Service North Dakota*, 443 N.W.2d 911 (N.D.1989). The converse is equally true. A teacher who is non-renewed during the school year is viewed as a dismissal.

[¶ 21] A teacher who is non-renewed during the school year must not be non-renewed for reasons that are frivolous or arbitrary under N.D.C.C. § 15.1–15–05, but that teacher may not always be viewed as having been dismissed for cause or for misconduct. Here, although Schmidt essentially claims the hearing officer disregarded her evidence about reporting the rapes, the hearing officer's decision reflects it decided the Warwick Public School District's explanation for the non-renewal was more credible. In administrative decisions, the agency is responsible for assessing the credibility of witnesses and resolving conflicts in the evidence. *Lovgren v. Job Serv.*, 515 N.W.2d 143, 145 (N.D.1994). We conclude there is evidence in this record from which a reasoning mind could reasonably find, as the hearing officer did, that Schmidt deliberately disregarded the Warwick Public School District's interest and deliberately violated the standards of behavior that the district had a right to expect from her. Under these circumstances, we conclude the school district's reasons for non-renewal can constitute disqualifying misconduct for purposes of unemployment compensation benefits. We hold a preponderance of evidence supports Job Service's findings that Schmidt deliberately violated the school district's directives, and we further hold Job Service's legal conclusion that Schmidt's conduct constitutes disqualifying misconduct is supported by its findings.

III

[¶ 22] We affirm the district court judgment affirming Job Service's decision.

[¶ 23] MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, and DANIEL J. CROTHERS, JJ., concur.