2009 ND 139

**Crystal SCHWEITZER, Petitioner and Appellant**

v.

**JOB SERVICE NORTH DAKOTA, Respondent and Appellee**

and

**LM Glasfiber (ND) Inc., Respondent.**

No. 20080341.

Supreme Court of North Dakota.

July 21, 2009.

Meredith Vukelic (argued), third-year law student, Margaret Moore Jackson (appeared) and Daniel Michael Schaffzin (ap-

peared), University of North Dakota School of Law, Grand Forks, N.D., for petitioner and appellant.

Michael T. Pitcher (argued), Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for respondent and appellee.

CROTHERS, Justice.

[¶ 1] Crystal Schweitzer appeals from a district court judgment affirming a Job Service decision concluding LM Glasfiber terminated Schweitzer's employment for reasons that constitute disqualifying misconduct and denying her claim for unemployment benefits. We affirm, concluding Job Service's findings of fact are supported by a preponderance of the evidence and its conclusion that Schweitzer engaged in disqualifying misconduct is supported by its findings.

I

[¶ 2] Schweitzer began working full time for LM Glasfiber in February 2005, and later began working as a facilities associate doing janitorial work for the company. LM Glasfiber maintained its own staff of permanent workers, but also relied on temporary workers hired through Express Personnel Services, a staffing agency. The LM Glasfiber human resources department was responsible for hiring all employees including those hired through the staffing agency.

[¶ 3] In September 2007, Pam Hune, the production manager working during Schweitzer's shift, requested that Schweitzer provide some direction for the temporary janitorial workers, including directing where the workers were to clean and when they were to take breaks. Schweitzer testified she believed she was an unofficial lead worker without the pay increase that normally accompanied the position.

[¶ 4] On December 14, 2007, Schweitzer contacted Alysa Haugen, a representative of Express Personnel, to inquire about the possibility of hiring Schweitzer's brother for a position in Schweitzer's department. Schweitzer testified she told Haugen she was a lead without pay within the janitorial staff at LM Glasfiber and she wanted to recommend her brother for a position she believed was open in the janitorial department.

[¶ 5] On December 17, 2007, Haugen sent an email about Schweitzer's phone call to Rick Sandwick, a LM Glasfiber human resources department employee. Haugen's email said:

"Crystal Schweitzer contacted me on Friday, December 14 2007, stating that she was a shift supervisor at LM Glassfiber [sic] and that there was an opening in the maintenance (cleaning) weekend shift. She also stated that she wanted me to get her brother (Jodi Schweitzer) through our process and have him start.

"I informed her that I was unaware that there was an opening and that I am only contacted by Rick.

"She also informed me that Thomas Cogsdell was no longer an Express Employee and that he was LM's."

Sandwick testified he spoke to Haugen about this email on at least three occasions to verify the accuracy of her account of the phone call. Sandwick also received from Haugen a signed copy of the email attesting to the conversation.

[¶ 6] The LM Glasfiber human resources manager contacted Schweitzer to set up a meeting to discuss Haugen's email. The first meeting was cancelled, and the human resources manager attempted to reschedule it, but Schweitzer refused to attend the meeting unless the plant supervisor would be present. After an internal review of Schweitzer's phone call to Haugen, on January 18, 2008, the

human resources manager sent Schweitzer a letter informing her LM Glasfiber was terminating her employment.

[¶ 7] Schweitzer filed a claim for unemployment benefits with Job Service of North Dakota. Job Service determined she was discharged for misconduct and denied her claim. Schweitzer appealed the decision and a hearing was held on March 4, 2008. During the hearing, Schweitzer attempted to submit audio tapes, but the appeals referee denied her request. The appeals referee found:

"The claimant denied representing herself as the shift supervisor. In the absence of direct testimony from the staffing service representative, it is not clear whether this individual misunderstood the claimant's title or, in the interest of ensuring that her brother have [sic] a chance at being hired, the claimant actually portrayed herself as someone in authority. The human resource director; however, spoke to the staffing service representative on at least three occasions to verify that her account of the matter was accurate. His testimony on that issue is deemed to be credible.

"What is clear is that the claimant telephoned the staffing service when she had no authority to do so. There was no indication by the employer that the vacancy within the maintenance department was going to be advertised or filled; thus, the claimant's statement to the staffing service representative was not true. The matter is further compounded by the claimant's directive to 'begin the process' of getting her brother hired so he could start his employment. There is simply no reason for the staffing representative to fabricate this matter.

"Having considered this issue, I find that the claimant did misrepresent her authority and entered an arena she had no business entering. She had no authority to discuss the hiring practice with the staffing representative; had no authority to direct this person's actions; had no authority to act outside the scope of her position; and was not classified as a lead worker. It is determined that the claimant's actions rise to the level of misconduct so as to be discharged. In this case, the employer has established that they had grounds to discharge the claimant and that they did so for a reason that constitutes misconduct. Accordingly, benefits are denied."

The appeals referee affirmed the decision denying Schweitzer's claim.

[¶ 8] Schweitzer attempted to appeal the referee's decision and submitted additional evidence supporting her position, but the Appeals Bureau declined to review the referee's decision and stated the referee's decision was the decision of the agency. Schweitzer petitioned for judicial review, and the district court affirmed Job Service's decision.

II

[¶ 9] Schweitzer argues Job Service erred in denying her claim for unemployment benefits. She claims the phone call to Haugen was not disqualifying misconduct because it was a single, isolated instance of bad judgment that did not harm LM Glasfiber's interests or violate an explicit policy.

[¶ 10] We will affirm the agency's decision unless: (1) the order is not in accordance with the law; (2) the order violates the appellant's constitutional rights; (3) the provisions of N.D.C.C. ch. 28–32 have not been complied with in the proceedings before the agency; (4) the agency's rules or procedures have not afforded the appellant a fair hearing; (5) the agency's findings of fact are not supported by a preponderance of the evidence; (6) the agency's

conclusions of law are not supported by its findings of fact; (7) the findings of fact do not sufficiently address the evidence the appellant presented; or (8) the agency's conclusions of law and order do not sufficiently explain the agency's rationale for not adopting a hearing officer's or administrative law judge's contrary recommendation. *Spectrum Care LLC v. Stevick*, 2006 ND 155, ¶ 8, 718 N.W.2d 593; N.D.C.C. §§ 28–32–46 and 28–32–49.

[¶ 11] A person may not receive unemployment benefits under N.D.C.C. § 52–06–02(2) if the person was discharged from employment for misconduct. *Schmidt v. Job Service*, 2008 ND 188, ¶ 16, 756 N.W.2d 794. "Misconduct" is:

"conduct evincing such wilful [sic] or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

*Id.* (quoting *Perske v. Job Serv. North Dakota*, 336 N.W.2d 146, 148–49 (N.D. 1983)). The employer has the burden to prove by a preponderance of the evidence that the terminated employee's actions constitute disqualifying misconduct. *Schmidt*, at ¶ 17.

[¶ 12] When a court reviews the agency's decision that an employee was terminated for disqualifying misconduct, we have said:

"The nature of the employment is a consideration when deciding whether an employee's conduct constitutes misconduct. The issue is a mixed question of fact and law. The evidence must support its findings of fact which, in turn, must sustain its conclusion regarding misconduct. If confronted with disputed facts, we defer to Job Service's factual conclusions and ascertain only whether a reasoning mind could have reasonably determined the factual conclusions were proven by a preponderance of the evidence. However, when the facts are undisputed, and contradictory inferences cannot reasonably be drawn from those undisputed facts, we review the legal conclusion anew."

*Spectrum Care*, 2006 ND 155, ¶ 9, 718 N.W.2d 593 (quoting *Johnson v. Job Serv. North Dakota*, 1999 ND 42, ¶ 12, 590 N.W.2d 877). Whether an employee's conduct constitutes disqualifying misconduct depends on the facts and circumstances of the case. *Spectrum Care*, at ¶ 10.

[¶ 13] LM Glasfiber admitted its decision to terminate Schweitzer's employment was based on this one incident and not on any past conduct. "[O]ne incident of bad judgment can be disqualifying misconduct if it results in a violation of an important employer interest or explicit policy." *Schmidt*, 2008 ND 188, ¶ 17, 756 N.W.2d 794.

[¶ 14] Schweitzer's conduct did not violate a written policy. However, "[a]n employer's policy need not be explicit and in writing for an employee's actions to constitute misconduct if the employee knew or should have known that the conduct involved was inappropriate and the employee's 'actions evinced an intentional and substantial disregard of the standard

of behavior which his employer had the right to expect from him.'" *Tehven v. Job Serv. North Dakota*, 488 N.W.2d 48, 52 (N.D.1992) (quoting *Marion v. Job Serv. North Dakota*, 470 N.W.2d 609, 612 (N.D. 1991)). LM Glasfiber had an unwritten policy that Sandwick, a human resources department employee, was in charge of hiring all new employees, including hiring temporary employees through a staffing agency. There was testimony that all hiring at LM Glasfiber went through Sandwick and that no employee was authorized to hire new employees on their own, including supervisors and lead workers. Schweitzer testified the duties of a lead worker included telling the other workers when to take breaks and what areas of the plant to clean. There was evidence of an unwritten no-hiring policy and evidence that Schweitzer knew she did not have authority to hire new employees.

[¶ 15] The appeals referee found Schweitzer did not have authority to discuss the hiring practice with the staffing agency, she misrepresented her authority when she called the staffing agency, and she directed the staffing agency to begin the process of hiring her brother so he could start working for LM Glasfiber. Schweitzer contends she did not tell Haugen she was a supervisor or direct Haugen to begin the process of hiring her brother. As the factfinder, the appeals referee must decide issues of credibility and ascertain the weight to give the evidence. *Spectrum Care*, 2006 ND 155, ¶ 11, 718 N.W.2d 593. When this Court reviews an agency decision, "we do not determine whether the referee was correct in its findings; rather, we decide whether a reasoning mind reasonably could have determined whether the referee's factual conclusions were proved by the weight of the evidence." *Id.*

[¶ 16] The appeals referee's findings are supported by the evidence presented at the hearing. A signed copy of Haugen's email was admitted into evidence and Sandwick testified that he verified the accuracy of the email. The appeals referee found Sandwick's testimony was credible. Based on the evidence presented at the hearing, a reasoning mind could reasonably conclude Schweitzer told Haugen that she was a shift supervisor and that she directed Haugen to begin the process of hiring her brother. The facts as found by the appeals referee show Schweitzer knowingly violated LM Glasfiber's no-hiring policy and her conduct was more than an error in judgment. Schweitzer knew her conduct was inappropriate and her actions display an intentional and substantial disregard of the standard of behavior her employer had the right to expect from her. The findings of fact are supported by a preponderance of the evidence, and the findings support the conclusion that Schweitzer engaged in misconduct disqualifying her from unemployment benefits.

### III

[¶ 17] Schweitzer claims she was denied due process and a fair hearing because the appeals referee failed to admit and consider the tapes Schweitzer had recorded of conversations with different LM Glasfiber employees.

[¶ 18] An administrative hearing officer has broad discretion to control the admission of evidence, and we review an officer's evidentiary ruling for an abuse of discretion. *May v. Sprynczynatyk*, 2005 ND 76, ¶ 24, 695 N.W.2d 196. "A person is denied due process or a fair hearing when the defects in the hearing process might lead to a denial of justice." *Carlson v. Job Serv. North Dakota*, 548 N.W.2d 389, 395 (N.D.1996). In adjudicative proceedings before an administrative agency, all parties shall have "the opportunity to respond, present evidence and ar-

gument, conduct cross-examination, and submit rebuttal evidence." N.D.C.C. § 28–32–35. Although the rules of evidence are more relaxed in unemployment compensation hearings, the hearing must be conducted in a "manner as to ascertain the substantial rights of the parties." N.D.C.C. § 52–06–20. *See also Stalcup v. Job Serv. North Dakota,* 1999 ND 67, ¶ 11, 592 N.W.2d 549.

[¶ 19] Throughout the hearing, Schweitzer asked various witnesses about the recorded conversations she had with them. Schweitzer summarized what information was contained in the recorded conversations, and other witnesses agreed with her summary of the conversations. At the end of the hearing Schweitzer asked the appeals referee where she could send the tapes. The appeals referee informed her he did not need them. Schweitzer did not object. The appeals referee asked if there was any objection to closing the record, and Schweitzer said no. After the appeals referee's decision, Schweitzer submitted a request for Appeals Bureau review and included evidence not presented at the hearing. Schweitzer did not send the recorded conversations in with the new evidence.

[¶ 20] Schweitzer had an opportunity to present her evidence. She summarized what was said during the recorded conversations and other witnesses agreed with her summary. She did not object to the appeals referee's decision not to include the tapes in the record. We conclude that the appeals referee did not err by failing to admit the tapes and that Schweitzer was not denied a fair hearing.

## IV

[¶ 21] We conclude Job Service's findings are supported by a preponderance of the evidence and its conclusion that Schweitzer engaged in disqualifying misconduct is supported by its findings. We affirm the district court judgment affirming Job Service's decision denying Schweitzer's claim for unemployment benefits.

[¶ 22] DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, dissenting.

[¶ 23] There is no statutory definition of "misconduct" as used in N.D.C.C. § 52–06–02(2). *Perske v. Job Service,* 336 N.W.2d 146 (N.D.1983). Rather, as the majority notes, that definition has evolved through our case law. *Id.* I agree with the majority opinion there is evidence that LM Glasfiber had an unwritten policy and that Schweitzer was aware of the policy. An employer may have a number of written or unwritten policies covering a range of matters from trivial to highly sensitive. Without more consideration of how one violation of that policy affects the employer's interest, I am concerned we have established automatic disqualification for unemployment benefits whenever a policy, trivial or highly sensitive, is violated. But automatic disqualification is clearly not what this Court intended when we said in *Perske:* "In an appeal such as this, the issue is not whether or not the employer had the right to discharge the employee, but rather the issue is whether or not Job Service is justified in denying benefits for the conduct in question." *Id.* at 148.

[¶ 24] In *Perske,* we adopted the definition of misconduct cited by the majority from *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941). Significantly, we noted:

The Wisconsin Supreme Court noted the public policy of cushioning the effect of unemployment by a series of benefit

payments and determined that this policy would be defeated if mere mistakes, errors in judgment, and unintentional carelessness were considered to be within the definition of "misconduct". The Wisconsin court construed the unemployment statute *in a manner least favorable to working a forfeiture to the unemployed individual* . . . .

*Id.* at 148, 296 N.W. 636 (emphasis supplied).

[¶ 25] Considering only whether or not a policy of the employer has been violated without weighing that policy against the employer's interests does not fulfill the purpose for which the Wisconsin court and, subsequently, this Court, adopted the definition of "misconduct" which we all agree controls this proceeding. In *Hins v. Lucas Western,* 484 N.W.2d 491, 496 (N.D. 1992), we concluded that: "Where the conduct in question is an isolated incident, the connection between the conduct and the impact or potential impact on the employer's interest must be especially close."

[¶ 26] Here, there is no evidence this was more than an "isolated instance" of an unsophisticated person seizing on an increase in her responsibilities to exaggerate her status in an attempt to secure employment for her brother. I agree she had no authority to do so and there is evidence to indicate she knew she had no authority to do so. It was an ignorant attempt that was quickly uncovered. Nevertheless, there is little or no discussion of the impact on the employer's interest in the Job Service decision. Rather, the emphasis is on whether or not the isolated incident was intentional. Most of the Job Service decision is concerned with the factual issues of whether or not Schweitzer knew she did not have the authority to do what she did. If it was intentional, it appears Job Service presumes the impact against the employer's interest. I have found no cases in which we have held that an intentional incident presumptively has a close impact on the employer's interest. While I agree the incident was intentional and against the employer's interest, there is no discussion of the *impact* on the employer's interest. Without that discussion and finding in the Job Service decision, I am not convinced that this isolated incident comes within the definition of misconduct which *this Court,* not Job Service or the Legislature, has adopted.

[¶ 27] If we do not require some weighing of the employer's policies against an important interest of the employer, I believe we allow employers to seize on a violation of any policy when unemployment rates are high, workers are readily available, jobs are scarce and unemployment compensation is most needed, to discharge an employee without concern about the employer's rate of contribution. *See* N.D.C.C. § 52-04-06. Although the employer may discharge an employee without cause in the absence of a contrary contractual obligation, the employee should not be deprived of unemployment compensation unless there has been a substantial, as well as an intentional, disregard of the employer's interests. Unfortunately, the trend in the past decisions of Job Service as well as the opinions of this Court appear to allow compensation where the employee's actions were unintentional or the employer's policy was not clear, and to deny compensation where the policy was clear and the employee's actions were intentional, without further discussion of how the intentional disregard of the policy significantly impacted the employer's interests.

[¶ 28] Deciding whether a person's actions constitute misconduct for purposes of determining eligibility for unemployment compensation benefits is a mixed question of fact and law. *Marion v. Job Service North Dakota,* 470 N.W.2d 609, 611-12

(N.D.1991). The agency's findings of fact must be supported by the evidence which in turn must sustain its conclusion regarding misconduct. *Id.* Where the agency's conclusions are based upon undisputed facts we review those legal conclusions anew. *Id.* (citing *Newland v. Job Service North Dakota,* 460 N.W.2d 118 (N.D. 1990)).

[¶ 29] Although there was some dispute as to the facts in this matter, for purposes of my position I would consider the facts as found by Job Service to be undisputed. But, without discussion of how those specific facts involved a substantial disregard of the employer's interests, we should not affirm the decision.

[¶ 30] Because I do not believe the findings and, perhaps, the record reflect Schweitzer's actions rose to that level in this instance, I would reverse the decision of Job Service North Dakota denying her claim for unemployment benefits and remand for further findings on how the isolated instance at issue here involved a substantial disregard of the employer's interests.

[¶ 31] MARY MUEHLEN MARING, J., concurs.