2011 ND 135

Maria C. WILLITS, Petitioner and Appellant

v.

JOB SERVICE NORTH DAKOTA, Respondent and Appellee

and

Circle of Nations School, Respondent.

No. 20100375.

Supreme Court of North Dakota.

July 13, 2011.

Kelsee Jean Macintosh–Ellig, Fargo, N.D., for petitioner and appellant.

Michael Trent Pitcher, Bismarck, N.D., for respondent and appellee.

CROTHERS, Justice.

[¶ 1] Maria Willits appeals from a judgment affirming a decision of Job Service North Dakota denying her application for unemployment benefits after Job Service found she voluntarily left her employment without showing good cause attributable to her employer. We affirm, concluding a reasoning mind reasonably could have determined that Willits did not make a reasonable effort to preserve her employment relationship and, consequently, that she left her employment without good cause attributable to her employer.

I

[¶ 2] In October 2003, Willits began working full time as a licensed practical nurse (LPN) for Circle of Nations School, a boarding school for Native American children located on federal property in Wahpeton. Willits was licensed in Minnesota and testified her supervisor told her when hired that Willits need not be licensed in North Dakota because the school was under federal jurisdiction. Willits's primary job duties as a medication monitor and quality assurance specialist was to fill prescriptions and medications prescribed for students by the school's psychiatrist. About ten percent of Willits's duties included training school staff to administer medications to students. In September 2009, Willits asked if she could be employed only part time at the school, but her request was denied.

[¶ 3] According to Willits, she became concerned that one staff member she had trained was not proficient in English. After a different staff member committed a medications error in late October 2009,

Willits met with Don Viele, dean of students of the school, and expressed concerns about training the two staff members to administer medications because she did not believe they were qualified and would pose a risk to the student population. Willits told Viele she would not recertify the two staff members but would train others. Willits subsequently contacted the Minnesota and North Dakota State Boards of Nursing and inquired whether she could conduct medication administration training as an LPN. According to Willits, representatives of both boards informed her that she was not authorized to train staff to administer medications and that she needed to be supervised by a registered nurse or licensed practitioner. According to Willits, she concluded her work at the school was outside the scope of her nursing license.

[¶ 4] On November 6, 2009, Willits met with the school's business manager, Sandy Gilbertson, and told her what she had learned from the boards of nursing. Gilbertson told Willits she should voice her concerns to school administrators at a November 10, 2009 administrative meeting. Gilbertson also told Willits that the school's chief administrative officer was researching whether an LPN could train individuals in administering medications. According to Willits, she indicated to Gilbertson that she would find work elsewhere if she was required to continue training staff members. Gilbertson testified at the administrative hearing she did not recall Willits stating she would quit if she was required to continue training.

[¶ 5] Willits's concerns were discussed with the school's administrators during the meeting on November 10, 2009. Willits testified she told the administrators she would not perform job duties outside the

scope of her nursing license and would have to quit if she was required to continue training staff members in administering medications. The administrators decided to investigate Willits's license concerns, to obtain a doctor to provide training oversight and to go forward as normal until more information was received regarding whether school policies needed to change. According to the administrators present at the meeting, the only thing Willits said at the meeting was, "So, you want me to continue working as usual." On November 11, 2009, Willits called the school and said she could not work that day because she was sick. On November 12, 2009, Willits informed the school through a phone message that she quit her employment. By then, the school had obtained the services of a doctor to oversee nursing activities. Willits did not return a phone call from Gilbertson who wanted to discuss the matter with her.

[¶ 6] Willits applied for unemployment benefits. Job Service denied her claim because it determined she quit her job without good cause attributable to her employer. Willits requested a hearing, and an appeals referee also found Willits quit without good cause attributable to her employer. Willits appealed to district court. The court remanded the case to the appeals referee to make findings of fact on whether Willits notified Viele or Gilbertson before the November 10, 2009 administrative meeting that she would have to quit if she was required to continue to train staff members in administering medications, and whether Willits informed her employer at the November 10, 2009 meeting that she would not perform any duties outside the scope of her nursing license. Following a hearing on remand, the appeals referee answered the questions in the negative and affirmed his earlier decision. The district court then affirmed Job Service's

decision denying Willits unemployment benefits.

## II

[¶ 7] Willits argues she is entitled to unemployment benefits because she voluntarily left her employment with good cause attributable to her employer. Under N.D.C.C. § 52–06–02(1), an individual is disqualified from receiving unemployment benefits if the person "voluntarily quit without good cause attributable to the employer." "The dual objectives of unemployment compensation are to soften the harsh impact of involuntary unemployment and the competing objective of protecting employers from 'quits' that have nothing to do with the employer or the employment and from dismissals based upon employee misconduct." *Baier v. Job Serv. North Dakota*, 2004 ND 27, ¶ 5, 673 N.W.2d 923. As this Court explained in *Newland v. Job Serv. North Dakota*:

"We believe [N.D.C.C. §§ ] 52–01–05 and 52–06–02 indicate that the Legislature, in enunciating a public policy to provide unemployment compensation, intended to strike a balance between the rights of the unemployed worker who genuinely wants to work, contained in section 52–01–05, and the protection of the former employer from quits that have nothing to do with the employer or the employment, furthered by section 52–06–02. Job Service, in determining eligibility for compensation, must be attuned to that balance, and so must we. However, because unemployment compensation laws are remedial legislation, the balance should be struck in favor of the employee. Remedial statutes must be liberally construed in favor of the purposes obviously intended."

460 N.W.2d 118, 121–22 (N.D.1990) (internal citations omitted); *see also Johnson v. Job Serv. North Dakota*, 1999 ND 42, ¶ 10,

590 N.W.2d 877. To be eligible for unemployment benefits, an employee "must have made a good faith effort to remain 'attached to the labor market' but did not succeed through 'no fault' of her own. *See* N.D.C.C. § 52–01–05. 'Fault' in the context of section 52–01–05 means failure to make reasonable efforts to preserve one's employment." *Newland*, at 122. Good cause is "a reason for abandoning one's employment which would impel a reasonably prudent person to do so under the same or similar circumstances." *Id.* at 123 (footnote omitted). Whether an employee voluntarily quit and whether the employee has shown good cause attributable to the employer are both questions of fact. *Hjelden v. Job Serv. North Dakota*, 1999 ND 234, ¶ 8, 603 N.W.2d 500.

[¶ 8] This Court's review of an administrative agency's decision is limited under N.D.C.C. § 28–32–46, and "we do not make independent findings of fact or substitute our judgment for that of the agency's." *Von Ruden v. North Dakota Workforce Safety and Ins. Fund*, 2008 ND 166, ¶ 8, 755 N.W.2d 885. "As the factfinder, the appeals referee must decide issues of credibility and ascertain the weight to give the evidence." *Schweitzer v. Job Serv. North Dakota*, 2009 ND 139, ¶ 15, 770 N.W.2d 238. " '[W]e do not determine whether the referee was correct in its findings; rather, we decide whether a reasoning mind reasonably could have determined whether the referee's factual conclusions were proved by the weight of the evidence.' " *Id.* (quoting *Spectrum Care LLC v. Stevick*, 2006 ND 155, ¶ 11, 718 N.W.2d 593). Under our standard of review, the issue on appeal is whether a reasoning mind reasonably could have determined Willits voluntarily left her employment without showing good cause attributable to her employer.

[¶ 9] Willits's argument is based on her testimony during the administrative hearings that she informed school administrators before and at the November 10, 2009 meeting that she would have to quit her job if she were required to perform any duties outside the scope of her license. However, the appeals referee found on remand that she did not so inform school administrators either before or during the meeting, and explained:

"The additional evidence taken in this case provided a slightly clearer picture of the circumstances surrounding the claimant's separation from employment. The referee is convinced that the claimant's concerns were not so much as to whether she would be in violation of the regulations governing the instruction of individuals in the administration of medication as it was that she was expected to conduct this training to two individuals she did not feel were qualified. This is much more evident when consideration is given to the claimant's conversation with the Dean of Students on November 2, 2009, when she stated that, although she did not intend to continue training two specific individuals, she would continue to conduct such training to other individuals as necessary.

"The same is true with regard to the meeting conducted on November 10, 2009. At no time did the claimant state that she would voluntarily leave her employment if she would be required to continue performing such training nor did she request to be exempt from this aspect of her job duties. On the contrary, without advance notice, the claimant simply left a voice message stating that she was quitting her job.

"The referee does not dispute that the claimant might have agonized over the decision to leave her employment; however, as stated in the previous decision, in order to establish good cause for leav-

ing an individual's employment, the individual must make a reasonable attempt to preserve the employment relationship. In this case, her failure to do so prevented the employer from making an attempt to resolve the issue(s) that were of concern to the claimant. The claimant had the obligation to make a reasonable effort to ensure that she could have remained employed. She did not do so in this case and, as [a] result, it cannot be said that she left her employment with good cause attributable to the employer."

[¶ 10] Evidence in the record establishes that school administrators were investigating Willits's concerns and were trying to find a solution to those concerns. The appeals referee found Willits informed no one she would quit if required to perform duties she thought could threaten her license. Willits then quit two days after the meeting and before her concerns could be investigated and resolved by school administrators. An employee who voluntarily quits before the employer has been given a reasonable chance to resolve identified problems is not entitled to unemployment benefits. *See Esselman v. Job Serv. North Dakota,* 548 N.W.2d 400, 402–404 (N.D.1996); *see also Carlson v. Job Serv. North Dakota,* 548 N.W.2d 389, 394–95 (N.D.1996). From this record, the appeals referee could reasonably find there were reasons other than Willits's licensure status that formed the basis for her decision to leave her employment.

[¶ 11] We conclude a reasoning mind reasonably could have determined that Willits did not make a reasonable effort to preserve her employment and, consequently, that she voluntarily left her employment without showing good cause attributable to her employer.

### III

[¶ 12] We have considered the other arguments raised by Willits and find them unnecessary to our decision or without merit. Because the appeals referee's findings of fact are supported by a preponderance of the evidence and those findings support the decision of the referee and Job Service, we affirm the judgment.

[¶ 13] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.