Filed 3/15/12 by Clerk of Supreme Court

Modified 4/25/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 57

Valerie Joy Tronnes, Appellant

v.

Job Service North Dakota, Respondent and Appellee

and

Wal-Mart Associates, Inc., Respondent

No. 20110280

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Debbie Gordon Kleven, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Margaret Moore Jackson (appeared) and Robin R. Runge (on brief), University of North Dakota School of Law, 215 Centennial Drive Stop 9003, Grand Forks, ND 58202-9003, for appellant.  Anne Sim (argued) and Florent Martel (appeared), third-

year law students, appearing under the rule on the limited practice of law by law students.

Michael T. Pitcher, Assistant Attorney General, Office of Attorney General, 500 N. 9th St., Bismarck, ND 58501-4509, for respondent and appellee.

Tronnes v. Job Service

No. 20110280

VandeWalle, Chief Justice.

[¶1] 
Valerie Joy Tronnes appealed from a judgment affirming the decision of Job Service North Dakota that denied her claim for unemployment benefits.  We affirm.

I.

[¶2] In 2002, Tronnes began working part-time at the Wal-Mart Vision Center.  Wal-Mart distributes wages to its employees through a debit card system every two weeks.  On September 2, 2010, Tronnes received her paycheck.  Tronnes obtained a cashier’s check and purchased a few items at Wal-Mart’s customer service center.  The cashier’s check and purchased items totaled $330.  This amount was mistakenly credited to Tronnes’s account by a different employee rather than deducted, which resulted in a $660 benefit to Tronnes.

[¶3] On September 30, 2010, Tronnes met with the vision center manager, Pat Johnson, and the asset protection coordinator, Sherry Hasier, about the $660.  Tronnes testified she noticed there was extra money in her account but she believed the amount was correct.  Tronnes was issued a paid day off, or “D-day,” to decide whether to remain employed with Wal-Mart.  In a voluntary quit worksheet, Tronnes stated Johnson and Hasier told her the situation was “an integrity issue.”  Tronnes testified she believed a “D-day” was an indication she was going to be fired in the future.  After meeting with Johnson and Hasier, Tronnes contacted Job Service to look for other employment.  Tronnes returned to Wal-Mart and met with the store manager, named in the record as Cameron Stull and Cameron Stone, who revoked the “D-day” because he believed the $660 benefit to Tronnes was not her fault and asked her to report to work the next day.  Tronnes informed the store manager she had made other plans but would return to work on October 2, 2010.  The store manager testified he told Tronnes they could work out repayment of the $660 in the future.  The store manager stated Tronnes told him she was looking for another job, and he believed she would be quitting, so he told her she would need to repay Wal-Mart the $660.  Tronnes suggested her sick leave and vacation time could cover the money.  Tronnes gave conflicting testimony about whether an agreement to pay back the money was reached when she met with the store manager on September 30.  Tronnes testified: “I told [the store manager] I would continue working and that I could try to work something out as far as paying it back.  I had agreed to pay it back[.]”  When asked by the referee, “Okay, so, there was an arrangement that you would pay it back, it would just have to be over a period of time?”  Tronnes responded, “There was an arrangement, right, correct, but there was nothing written out at that point.”  Later in the hearing, the referee asked, “Okay, so if you didn’t return they’d take the whole check, if you did return it was your understanding that they would take it out in increments.”  Tronnes answered, “Absolutely nothing had been agreed upon at that point.”

[¶4] Tronnes worked her shifts at Wal-Mart from October 2-13, 2010.  On October 13, 2010, a regularly scheduled payday, Tronnes attempted to use her debit card but it was declined because her account had a balance of zero.  Tronnes spoke to Johnson and learned her paycheck had been withheld to offset a portion of the $660, and Johnson instructed her to speak with the store manager or the regional optical manager.  Tronnes did not speak to the store manager or the regional optical manager and instead contacted Wal-Mart’s human resources department in Fargo.  Tronnes testified she was told there was nothing Wal-Mart could do for at least two weeks.  She also testified there was no written agreement in place to allow her paycheck to be withheld.  Tronnes called Wal-Mart to state she would not be coming to work during the shifts she was scheduled to work between October 13 and October 30, 2010.

[¶5] On November 10, 2010, Tronnes filed a claim for unemployment benefits with Job Service, which determined she was ineligible because she voluntarily quit her employment for reasons that did not constitute good cause attributable to Wal-Mart.  Tronnes requested a hearing, which was conducted in February 2011.  Tronnes,  Hasier, and the store manager testified at the hearing.  The appeals referee affirmed the decision denying Tronnes’s claim, finding Tronnes left her employment for a disqualifying reason.  Tronnes requested a review of the referee’s decision.  Job Service denied Tronnes’s request because an appeal of the referee’s decision is a matter of right only if the referee’s decision does not affirm Job Service’s initial decision.  
See
 N.D.C.C. § 52-06-19.  Tronnes filed a petition for review with the district court, and the district court affirmed the referee’s decision.

II.

[¶6] In an appeal from an administrative agency decision, we review the agency’s decision and respect the district court’s analysis if it is sound.  
Baier v. Job Serv. N.D.
, 2004 ND 27, ¶ 6, 673 N.W.2d 923.  We affirm the agency’s decision unless (1) the decision is not in accordance with the law; (2) the decision violates the appellant’s constitutional rights; (3) the provisions of N.D.C.C. ch. 28-32 have not been complied with in the agency’s proceedings; (4) the agency’s rules or procedure have not afforded the appellant a fair hearing; (5) the agency’s findings of fact are not supported by a preponderance of the evidence; (6) the agency’s conclusions of law are not supported by its findings of fact; (7) the agency’s findings of fact do not sufficiently address the evidence presented by the appellant; or (8) the agency’s conclusions of law do not sufficiently explain its rationale for not adopting contrary recommendations by a hearing officer or administrative law judge.  N.D.C.C. §§ 28-

32-46, 28-32-49.  When reviewing the agency’s factual findings, we do not make independent findings or substitute our judgment for that of the agency.  
Gartner v. Job Serv. N.D.
, 2004 ND 135, ¶ 3, 681 N.W.2d 828.  We determine if a reasoning mind could have reasonably determined the referee’s factual conclusions were proven by the weight of the evidence.  
Id.

A.

[¶7] Tronnes argues the appeals referee did not consider all of the evidence and the referee’s order is not in compliance with the law.  Specifically, Tronnes asserts the referee disregarded the illegality of Wal-Mart’s decision to withhold her pay and the decision is not in compliance with the law because the decision “condoned Wal-

Mart’s unlawful withholding of Ms. Tronnes’ pay[.]”

[¶8] Section 28-32-46(7), N.D.C.C., requires the agency to sufficiently address the evidence presented by Tronnes in its findings of fact; if it fails to comply, the district court must reverse the order. At the hearing, the appeals referee asked the store manager if withholding an employee’s paycheck was “something that’s often done, I mean, in accordance with the Labor laws?”  The store manager responded, “
Well, on the advance and there was another way to do [it], we should have done that.” 
  Later in the hearing, the referee asked the store manager if he was required to refund Tronnes’s paycheck as part of her claim with the Department of Labor.  The store manager answered, “I did pay that back when she contacted the Department of Labor.”  The record contains assertions by Tronnes that withholding her paycheck was illegal, statements by Tronnes that the Department of Labor told her the withholding was illegal, and a letter from the Department of Labor to Tronnes stating her complaint inquiry was satisfied and closed and a money order for the amount of her paycheck was enclosed.

[¶9] In the decision, the referee noted Wal-Mart “was later required to refund the amount of deduction from the claimant’s debit card through a claim to the North Dakota Department of Labor.”  The referee further stated, “When the employer was placed on notice the claimant was leaving, they deducted what they were able on her next payroll.  The appeals referee 
does not necessarily agree with the manner in which the issue was handled;
 however, under the circumstances, it was done as a result of the claimant’s actions.”  (Emphasis added).  Based on the testimony at the hearing, the record before the referee, and the referee’s decision, the referee sufficiently addressed the evidence presented by Tronnes, and there is nothing to suggest the decision “condoned” Wal-Mart’s withholding of Tronnes’s paycheck.

B.

[¶10] Tronnes asserts she is entitled to unemployment benefits because she involuntarily quit as a matter of law when Wal-Mart withheld her paycheck.  If she is deemed to have quit voluntarily, Tronnes argues she had good cause attributable to Wal-Mart to leave her employment.

[¶11] “The dual objectives of unemployment compensation are to soften the harsh impact of involuntary unemployment and the competing objective of protecting employers from ‘quits’ that have nothing to do with the employer or the employment[.]”  
Baier
, 2004 ND 27, ¶ 5, 673 N.W.2d 923. A person is disqualified for unemployment benefits if the individual voluntarily quit without good cause attributable to the employer.  N.D.C.C. § 52-06-02(1).  When applying section 52-06-

02, Job Service must first determine if the employee quit or was fired, which is a factual decision.  
Hjelden v. Job Serv. N.D.
, 1999 ND 234, ¶ 8, 603 N.W.2d 500.  An employee voluntarily quits if he or she freely chooses to stop working for the employer.  
Id.
 at ¶ 10.

[¶12] Tronnes argues she was forced to work elsewhere after Wal-Mart withheld her paycheck, therefore she involuntarily quit as a matter of law.  The store manager testified that he revoked the “D-day” because he believed the $660 benefit to Tronnes was not her fault and he told her they could work out repayment of the money in the future.  Tronnes testified there was an agreement for her to pay back the money, but then testified that nothing had been agreed upon to repay the $660.  Tronnes and the store manager both testified that Tronnes informed the store manager she had gone to Job Service to seek other employment.  The store manager testified he interpreted this to mean that Tronnes was going to quit and that is why Wal-Mart withheld her next paycheck.

[¶13] In affirming the denial of unemployment benefits for Tronnes, the appeals referee concluded:

The greater weight of evidence in the record provides for the conclusion the claimant left her employment for a disqualifying reason.  When the employer spoke to the claimant on September 30, 2010, she had already made up her mind that she was seeking other work; even though the employer was removing the disciplinary “D-Day”.  Under the circumstances, it cannot be said that her sole reason for leaving her job was due to the deduction of the previously credited amount to her payroll check on October 13, 2010.  By verbal agreement, the employer was going to deduct a portion of the amount as long as the claimant remained employed.  When the employer was placed on notice the claimant was leaving, they deducted what they were able on her next payroll.  The appeals referee does not necessarily agree with the manner in which the issue was handled; however, under the circumstances, it was done as a result of the claimant’s actions.  She knew or should have known her debit card had been credited an additional $330 and ultimately left her employment because of the associate’s error in crediting her debit card.  In reality, she had only to remain employed and the matter would have been resolved through a gradual deduction to her future payroll.  As it currently stands, the claimant still owes the employer the entire $660.

After considering the facts of this case, it is determined the claimant left her employment for personal reasons.  While she may have a good personal reason(s) for leaving her job, the claimant has not established the conditions of her employment were so unfavorable that she could not have continued working.  In the absence of showing she left her job with good cause attributable to the employer, benefits are denied.  

The referee found there was a verbal agreement that Wal-Mart would deduct a portion of Tronnes’s paycheck over a period of time as long as Tronnes stayed employed with Wal-Mart.  The referee also found Tronnes had decided to seek other employment, and therefore the paycheck was withheld.  As the factfinder, the appeals referee decides issues of credibility and the weight to give the evidence, and we must rely on the referee’s findings on these issues.  
Willits v. Job Serv. N.D.
, 2011 ND 135, ¶ 8, 799 N.W.2d 374 (quoting 
Schweitzer v. Job Serv. N.D.
, 2009 ND 139, ¶ 15, 770 N.W.2d 238).  Based on the record before us, a reasoning mind could have reasonably concluded that Tronnes voluntarily quit her job at Wal-Mart.  We decline to hold as a matter of law that Tronnes involuntarily quit when Wal-Mart withheld her paycheck.

[¶14] If Job Service finds the employee voluntarily quit, the employee is ineligible for benefits unless the employee shows good cause attributable to the employer, which is also a factual issue.  
Hjelden
, 1999 ND 234, ¶ 8, 603 N.W.2d 500.  Good cause means “‘a reason for abandoning one’s employment which would impel a reasonably prudent person to do so under the same or similar circumstances.’”  
Willits
, 2011 ND 135, ¶ 7, 799 N.W.2d 374 (quoting 
Newland v. Job Serv. N.D.
, 460 N.W.2d 118, 123 (N.D. 1990) (footnote omitted)).  Attributable to employer means “‘produced, caused, created or as a result of actions by the employer.’”  
Newland
, 460 N.W.2d at 122 (quoting 
Couch v. N.C. Emp. Sec. Comm’n
, 366 S.E.2d 574, 577 (N.C. Ct. App. 1988)).  After her paycheck was withheld, Tronnes spoke with Johnson, who instructed Tronnes to speak with the store manager or the regional optical manager.  Tronnes did not speak with the store manager or the regional optical manager, but called the human resources department in Fargo.  Tronnes testified that the representative told her nothing could be done for two weeks.  At that point, Tronnes called Wal-Mart before each of her scheduled shifts to say she was not coming to work.  We cannot conclude the referee erred in finding Tronnes failed to show good cause to leave her employment.

[¶15] Furthermore, “[a]n employee who voluntarily quits before the employer has been given a reasonable chance to resolve identified problems is not entitled to unemployment benefits.”  
Willits
, 2011 ND 135, ¶ 10, 799 N.W.2d 374; 
see
 
Esselman v. Job Serv. N.D.
, 548 N.W.2d 400, 402-04 (N.D. 1996).  Tronnes did not give Wal-Mart a reasonable chance to resolve the issue of her withheld paycheck.  She did not speak to the individuals she was instructed to contact, but rather contacted the human resources department.  Tronnes called Wal-Mart for each of her remaining shifts to state she would not be coming to work.  On this record, a preponderance of the evidence supports the referee’s finding that Tronnes  voluntarily quit without good cause attributable to Wal-Mart.

[¶16] Tronnes argues she had good cause to quit because Wal-Mart withheld her paycheck in violation of N.D.C.C. § 34-14-04.1. That statute states in part, “Every employer . . . may deduct advances paid to employees, other than undocumented cash, and other individual items authorized in writing by the employees.”  N.D.C.C. § 34-

14-04.1.  Section 28-32-46, N.D.C.C., provides:  “A judge of the district court must review an appeal from the determination of an administrative agency 
based only on the record filed with the court.
” (Emphasis added).  Section 28-32-46 also governs the scope of this Court’s review of an administrative agency decision.  N.D.C.C. § 28-32-

49.  The record contains assertions by Tronnes that withholding her paycheck was illegal and her statements that the Department of Labor told her it was illegal.  The only document from the Department of Labor is the letter informing her the complaint inquiry was satisfied and closed and a money order was enclosed.  At the hearing, the store manager stated Wal-Mart treated the $660 Tronnes received as an advance when they withheld her paycheck.  The legality of Wal-Mart’s action and its treatment of the withholding as an advance was never analyzed or determined.  Tronnes bears the burden of showing her resignation was the result of good cause attributable to Wal-

Mart.  
Hjelden
, 1999 ND 234, ¶ 11, 603 N.W.2d 500.  The record is insufficient to sustain Tronnes’s contention that she had good cause to quit because Wal-Mart illegally withheld her paycheck.

[¶17] Additionally, “in order to qualify for benefits, the employee must have made a good faith effort to remain attached to the labor market but did not succeed through no fault of her own.”  
Newland
, 460 N.W.2d at 122 (citation and internal quotation marks omitted).  In this context, fault means the failure to make reasonable efforts to preserve one’s employment.  
Willits
, 2011 ND 135, ¶ 7, 799 N.W.2d 374.  Tronnes argues her “constant effort to preserve her employment at Wal-Mart” by calling in on the days she was scheduled demonstrates she had no intent to leave her employment. However, immediately after Tronnes was issued a “D-day,” she went to Job Service to search for another job.  Tronnes then returned to Wal-Mart and informed the store manager she went to Job Service to look for other employment.  The store manager testified he interpreted Tronnes’s action as an intent to quit.  Tronnes testified that when she subsequently called Wal-Mart, she was asked a few times if she was going to return to work, and she stated she did not know. We conclude a reasoning mind could have reasonably determined Tronnes did not make a reasonable effort to maintain her employment, and that she voluntarily left her employment without good cause attributable to Wal-Mart.

III.

[¶18] The remaining arguments raised by Tronnes are either unnecessary to our decision or without merit.  Because the  referee’s findings of fact are supported by a preponderance of the evidence, and the factual findings support the legal conclusion that Tronnes voluntarily quit without good cause attributable to her employer, we affirm the judgment.  

[¶19] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom

Daniel J. Crothers

Carol Ronning Kapsner

I concur in the result.

Mary Muehlen Maring